## NEILSON v. CROWDER et al. *

### No. 4304.

Court of Appeal of Louisiana. Second Circuit.

May 20, 1932.

Wilkinson, Lewis & Wilkinson and E. S. Klein, all of Shreveport, for appellants.

Redmond & Thompson, of Monroe, for appellee.

DREW, J.

This is a suit under the Workmen's Compensation Act (Act No. 20 of 1914, as amended). A determination of the case involves only questions of fact, there being no dispute over the application of the law. In finding the facts, the reputation and veracity of the witnesses is a necessary element, usually left with the district judge. The lower court has rendered a written opinion correctly stating the issues and fully discussing the testimony and the witnesses as follows:

"This is a suit under the Workmen's Compensation Law.

"Plaintiff alleges that he was employed by defendant, James F. Crowder, and that on or about the 2nd day of October, 1930, while so employed, and while engaged in his employment, in the course of his employer's business, that he sustained an injury to his left hand, and particularly to the forefinger and middle finger of said hand, which injury re-

sulted in the loss of the use of his said left hand.

"He further alleges that he was earning an average weekly wage of $24.00, and that subsequent to said injury defendant paid him compensation for 13 weeks, at $15.60 per week. He makes defendant Crowder's insurer, the Ætna Life Insurance Company, a party defendant, and prays for judgment against both defendants, in solido, for compensation in the sum of $15.60 per week for a period of 150 weeks, beginning with October 8, 1930, payable weekly, with 5% per annum interest on all overdue installments from maturity, until paid, less a credit of the amount of the compensation paid, and for further judgment for an amount necessary to cover plaintiff's medical and doctor's bills, and for costs.

"Answering, defendants deny that plaintiff received any injury and aver that plaintiff's condition and disability, if any, was not caused by any accident or injury, but was the result of a disease or condition of plaintiff existing prior to the time of plaintiff's alleged injury and they reconvene against plaintiff for the amount of 13 weeks compensation, alleged to have been paid, and for the sum of $46.00 medical expenses paid by defendants, both of which amounts, it is alleged, were paid in error.

"The record shows that defendant, James F. Crowder, has had, for a number of years, a distributor's contract with Gulf Refining Company, calling for the distribution of that Company's products in the Town of Ruston and certain surrounding territory. He had plaintiff employed, on the date of the alleged injury, and for some years prior thereto, in the capacity of a truck driver salesman. His duties were to load gas on a truck and deliver it to said defendant's customer, and, as is shown, he performed such other duties, in the conduct of his employer's business, as were assigned to him. On the occasion of the accident, plaintiff was engaged, for his employer, in assisting a Mr. Heard, an employee of Gulf Refining Co., in loading a tank on a truck, at Chatham, Louisiana, and while so loading it, the tank slipped or fell, cutting plaintiff's forefinger and middle finger, on the left hand. at a point close to the nails. This accident happened on the 2nd day of October, 1930.

"Plaintiff did not quit work until the 22nd day of November, 1930, some fifty-two days after the date of the injury. The injury was serious enough to bleed freely and it was necessary that it be bandaged. Plaintiff did not complain to his employer about the injury, but went ahead with his work, thinking the injury would not amount to anything serious. The wounds did not heal readily and before plaintiff quit work he consulted Dr. Harper. It appears that this consulta-

tion took place over the telephone and that Dr. Harper prescribed a treatment for eczema, which treatment afforded no relief. On the 18th of November, plaintiff's employer noticed that plaintiff had his hand bandaged, and, upon inquiring what the trouble was, plaintiff told him, for the first time, about the accident and injury. Mr. Crowder complained at plaintiff for not reporting the matter sooner, but plaintiff told him he had not thought the injury would amount to much, only a small doctor's bill, and he had taken care of that. Plaintiff had to quit work on the 22nd of November and then consulted Dr. S. S. Harrell. At about the same time the matter was reported to defendant Crowder's insurer, Ætna Life Insurance Company, and plaintiff was paid compensation by that Company for 13 weeks. It appears that plaintiff consulted Dr. Harper again, at a later date, but Dr. Harper 'did not come to any conclusion as to what the trouble was. Dr. Harrell treated plaintiff for several months.

"According to Dr. Harrell's testimony plaintiff's left hand, or the two fingers on that hand that had been injured, were infected. He made his first examination about the 20th of November. His examination revealed a deep, fouled ulcer on these fingers. Later other ulcers appeared and spread to both hands and to the left arm. A large abscess developed on the biceps muscle of that arm, which abscess Dr. Harrell lanced. Dr. Harrell diagnosed the trouble as mycardic or fungus infection, the type being blastomycosis. He says that this type of infection frequently flows from or follows a trauma, such as that which plaintiff sustained. Dr. Harrell, is not positive that the infection did follow the traumatism in this case, but he says that very probably it did. He says that there is danger of this infection as long as there is an opening in the skin. In this conclusion he is corroborated by the other doctors who testified in the case.

"Plaintiff testified that his fingers were never well from the time of the injury until he was discharged by Dr. Harrell. He says his fingers swelled and gave him trouble until he consulted Dr. Harrell. No doubt his work, which is shown to have been more or less heavy and rough, kept the wounds irritated so that they did not readily heal, and that, before they had healed, this infection lodged therein. It is not shown, and could not be with any degree of certainty, when the infection set up, but it was, no doubt, some days after the date of the injury.

"Dr. Harrell examined plaintiff's hand in open court. This examination revealed the fact that plaintiff's fingers are stiff, so stiff, in fact, that he could not and cannot close his hand sufficiently to grip any object. He could close his hand, without force, to about half of the normal position of the closed hand. It is Dr. Harrell's opinion that plaintiff cannot do heavy work on account of this condition of his hand.

"Drs. George Wright, Anderson and Harper testified for defendants.

"Dr. Wright examined plaintiff on or about the 17th day of June, 1931, at the request of defendants. He found plaintiff's fingers to be affected with an atrophic condition, which condition he ascribes to non-use. An X-ray, made by Dr. Anderson, showed the joints to be in good shape. He found the nerves and muscles to be in good condition, with the exception of a sluggish condition revealed by the use of the faradic current. He attributes this sluggishness to non-use, also. He found no evidences of a trauma, except the scar on the arm where Dr. Harrell lanced the abscess. He found a lesion on the right hand about the size of a quarter dollar.

"It was Dr. Wright's opinion that plaintiff had a skin disease on both hands. He could find no reason for plaintiff not using his hand in a normal way.

"Dr. Anderson's testimony was limited to a reading of the X-ray pictures. His testimony corroborates that of Dr. Wright as to the condition of the nerves and muscles of plaintiff's hand.

"Dr. Harper testified that he treated plaintiff for eczema some two years before the injury occurred. After the injury plaintiff, or plaintiff's wife, he is not certain which, called him and requested that he prescribe for plaintiff the same salve that he prescribed when he treated plaintiff for eczema. He did so. Sometime later he was called to plaintiff's home. Plaintiff told him the salve did not produce the same results that it did when he used it before. At this time, Dr. Harper found plaintiff's hand to be red and swollen, but he says he could not tell whether the trouble was eczema or not. He pronounced it an eczema condition, he says. It is well settled, in the law of this state, that it is incumbent upon the plaintiff, in a suit under the Workmen's Compensation Law (Act No. 20 of 1914, as amended), to prove by a preponderance of evidence, that is, with legal certainty, that an accidental injury was sustained, and a causal connection between the injury and the disability complained of.

"There can be no dispute over the fact that plaintiff sustained the injury alleged. That fact is well established by the evidence.

"The serious dispute in the case is on the question of whether or not there is causal connection between the injury and the disability.

"Plaintiff testified that his fingers did not get well, but remained sore and grew worse from the time of the injury until he consulted Dr. Harrell. I have known this

plaintiff for several years. He is an honest, truthful, hardworking man. I have never heard anybody question his veracity and integrity. The fact that he worked on at his job, after he was injured, and made no effort to collect compensation until he had to quit work, and then made a claim only after his employer had suggested it, convinces me that he is not a malingerer, and corroborates the opinion I had of him that he is a truthful and honest man. I believe his testimony. It is the weight of Dr. Harrell's testimony that the infection followed and flowed from the injury. Dr. Harrell is a physician who bears a fine reputation, not only as a physician, but as a man. I have the utmost confidence in his conclusions for two reasons: First, on account of his known ability as a physician, and, second, because of the fact that he has no interest in the outcome of this case. I think no reasonable conclusion can be drawn from the evidence other than that this injury caused or produced the disability with which plaintiff is afflicted. It is alleged, it is true, that plaintiff's disability is the result of a disease or condition of plaintiff existing prior to the date of the injury. What disease did plaintiff have? The evidence does not show that he had any at all. The inference is that his trouble was eczema. The only evidence of his having had eczema is obtained from the testimony of Dr. Harper that he treated him for eczema some two years before. Dr. Harper treated him for eczema some days after the alleged injury, but that treatment was ineffective. As the disease did not yield to a treatment for eczema, we may safely conclude that he did not have that disease. The infection did yield to Dr. Harrell's treatment. Therefore, we must conclude that Dr. Harrell's diagnosis was correct. If he had not had eczema for two years, and it cannot be argued from the evidence that he did, then how can we say, from the evidence, that eczema produced or caused the infection in plaintiff's hand? Such a conclusion, as I view it, cannot be reached. Then the question or defense of his having had some other disease must pass out of the case.

"I reach the conclusion that there is causal connection between the injury and the disability notwithstanding the testimony of Dr. Wright. Dr. Wright did not see plaintiff until about June 17, 1931. The conclusions of Dr. Harrell, the physician who treated plaintiff, must be accepted, over Dr. Wright's, as to the proper and correct diagnosis of plaintiff's condition. Dr. Wright is an able physician, but he is the regular examining physician for defendant, Ætna Life Insurance Company, and I think it may be said, without any injustice to him, that he does not occupy the disinterested position in this case that Dr. Harrell does.

"Evidently both defendants thought well of this phase of the case, for, it appears from the evidence, they paid plaintiff compensation for 13 weeks, after he quit work, without any protest. I think it is the custom of insurance companies to make due investigation of such cases before they begin making payments. I think it is too late now for defendants to raise the issue that there is no causal connection between the injury and the disability.

"The remaining question is the amount of compensation to which plaintiff is entitled.

"It is my conclusion, from a careful consideration of all the testimony, and from observing plaintiff's hand, in open Court, that he has lost about half the normal use of his left hand, as the result of this injury. I conclude from the evidence that Dr. Harrell discharged him the latter part of February, 1931. He quit work on the 22nd day of November, 1930. The best I can get at it he is entitled to total disability for 13 weeks. He is entitled, also, to one-half of 65% of his average weekly wage for an additional period of 137 weeks, the total compensation period not exceeding 150 weeks.

"The evidence shows that he was earning $24.00 per week.

"Defendants paid plaintiff's doctor bill, amounting to $46.00. Plaintiff incurred a bill at Ruston Pharmacy for medicines in the sum of $15.60. Defendants should pay this bill.

"Therefore, for the reasons herein assigned, plaintiff is entitled to judgment against the defendants, in solido, for compensation, beginning with October 8, 1930, in the sum of $15.60 for a period of 13 weeks, and in the sum of $7.80 per week for an additional period not exceeding 137 weeks, with 5% per annum interest on each installment from date due until paid, and in the further sum of $15.45 for medical expenses, less a credit of the amount of compensation paid, that is, 13 weeks at $15.60 per week; and all costs of this suit.

"And it is so ordered."

■ We fully agree with the lower court in the finding of facts and its conclusion. We do not agree with the statement in the opinion of the lower court that it is too late now for defendant to raise the issue that there is no causal connection between the injury or the disability. Defendant had the right to raise that question, although they had paid compensation for 13 weeks, by alleging, as they did, the payments were made on the erroneous assumption that plaintiff's disability was due to accident and injury such as would be covered by the Louisiana Workmen's Compensation Act. The proof, however, does not sustain their contention on this issue. The decree is entirely correct.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.