## TAGGART v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5281.   Decided June 18, 1932.   [12 P. (2d) 356.]

*C. R. Hollingsworth,* of Ogden, for plaintiff.

*Geo. P. Parker,* Atty. Gen., and *Bagley, Judd & Ray,* of Salt Lake City, for defendants.

WOLFE, District Judge.

James H. Taggart died on April 27, 1931. His widow, the petitioner, Adelgunda Taggart, filed her application with the Industrial Commission claiming compensation for the death of her husband. This was on the ground that on August 11, 1928, he suffered an accident while in the course of his employment resulting in a hemorrhage of the nose involving a great loss of blood, which in turn weakened the heart muscles, from which weakened condition of the heart death resulted. It transpired from the evidence that Taggart worked for the Sperry Flour Company since 1920; that from that date until August, 1928, he had apparently been in good health and had no serious illnesses; that he weighed over 200 pounds at the time of his hemorrhage. At that time he was engaged in sifting phosphate which was to be mixed with self-rising flour; that for about a year previous to the hemorhage he had been sifting phosphate several times a day for comparatively brief intervals; that there is always a certain amount of flour dust and other dust in a flour mill; that phosphate in this case meant calcium acid phosphate consisting of about 98 per cent phosphate calcium which caused, or was likely to cause, some irritation of the nose and respiratory tract as also did flour dust to some extent. Upon the day in question the deceased suffered a severe hemorrhage bleeding profusely from the nose. It is a fair conclusion from all the evidence that the hemorrhage indirectly caused or contributed to the death. The question is: Was the hemorrhage due to an accident arising out of or in the course of the employment?

The doctor testified that the hemorrhage was caused by an ulcer about two-thirds of the distance from the end of the nose to the top of the septum in the right nostril; that blood came from at least two blood vessels. Dr. Harding gave it as his opinion that the constant use of phosphate had dried the mucous membrane and that in a man of his age perhaps one of the small blood vessels was near the surface of the mucous membrane; that repetition of drying

out the membrane and dilation of the small blood vessel due to blowing the nose burst the vessel. There was no direct evidence as to whether the bleeding had been caused by picking or blowing the nose or by sneezing, or by some other circumstance, although Dr. Harding testified that the deceased had stated that he felt all the time that he wanted to blow something out of his nose but there was nothing there. Dr. Donoher testified that in his opinion a single inhalation of calcium phosphate could not have caused the perforating ulcer, but that the development covered a considerable period of time; that the mucous membranse farthest from the blood supply would be attacked first by the dust and phosphate in the air at those places where there were iregularities of the membrane; that the depressed spaces of the membrane would accumulate dust and that a scaling would result; that such scale might, in the course of time, be picked of or blown off or fall off by the contraction of the crust itself; that in the course of time, nobody could tell how long, the scale would become thicker and the depression deeper and would go through the septum and perforate it, and upon striking a blood vessel of considerable size there would be marked bleeding.

The commission found: "That the hemorrhage so suffered by James H. Taggart was not the result of an accident arising out of or in the course of his said employment with the Sperry Flour Company, but was the result of the gradual growth and development of said ulcer to a point where such growth and gradual progress caused a rupture of a blood vessel in the said James H. Taggart's nose; that said hemorrhage was not caused directly or indirectly by any accident arising out of or in the course of his said employment."

The applicant contends that there was no competent evidence to support said finding, but that the evidence shows that the death resulted from an accident arising out of or in the course of the employment. A reading of the record

reveals that no only was there competent evidence to support the finding of the commission, but that it is doubtful whether the commission could have made any other finding under the evidence. The applicant failed to sustain the burden of proving that the hemorrhage was due to an accident. If it were conceded that the picking of the nose or sudden blowing or sneezing was itself such an accident for which compensation could be given and the mere fact that it happened during the time of employment would satisfy the requirement of being in the course of the employment, there nevertheless is no evidence in this case to show that the hemorrhage occurred from any of such causes. It may have occurred naturally by the scale falling off, the mucous membrane carrying with it a portion of the wall of the blood vessel, and might have occurred any other place as well as during the time the deceased was at his employment. It is quite difficult to see how the commission could have decided it any other way under the evidence of this case. At the most, the hemorrhage was caused by an occupational disease which is not compensable under our law. Under the oft-repeated principle laid down by this court, if there is any substantial evidence to support the finding of the commission the award will not be disturbed. There is not only substantial evidence supporting the finding that the hemorrhage was not due to an accident, but it is questionable whether there is any substantial evidence in the record that it was due to an accident. The cases cited by the applicant, *Amalgamated Sugar Co.* v. *Industrial Commission,* 56 Utah 80, 189 P. 69; *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah 14, 206 P. 278, 23 A. L. R. 325; and *Industrial Commission of Ohio* v. *Tolson,* 37 Ohio App. 282, 174 N. E. 622, are readily distinguishable in principle from the instant case.

It appears that the Ocean Accident & Guarantee Corporation, insurance carrier for the Sperry Flour Company, paid compensation of $59.43 covering compensation for twen-

ty-nine days on the ground that the deceased suffered temporary total disability during the period from August 11 to September 9, 1928. The applicant contends that the carrier acknowledged that Taggart met with an accident and that it does not lie in its mouth later to deny that Taggart met with an accident which caused his death. Under the doctrine of the case of *Halling* v. *Industrial Commission*, 71 Utah 112, 263 P. 78, this contention is untenable.

The decision of the Industrial Commission is affirmed.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.