HARDING v. INDUSTRIAL COMMISSION
OF UTAH et al.

No. 5442.   Decided January 4, 1934.   (28 P. [2d] 182.)

*Christenson & Straw,* of Provo, for plaintiff.

*Robinson & Robinson,* of Provo, for defendant Provo Brick & Tile Co.

*Joseph Chez,* Atty. Gen., for defendants Industrial Commission and State Insurance Fund.

FOLLAND, Justice.

This is a proceeding to review an order of the Industrial Commission of Utah dismissing the application for adjustment of claim filed by plaintiff with the commisson October 27, 1932. In such application it was alleged that plaintiff on June 23, 1927, was injured by accident arising out of and in course of employment with the Provo Brick & Tile Company, a corporation, while hauling hay, he being on top of a load of hay when the team started suddenly and precipitated him to the ground causing permanent injuries, that compensation was paid him for a period of five years by the State Insurance Fund, as well as medical and hospital expenses, and that the State Fund then refused to make further payment on the ground it believed there was no total permanent dis-

ability. On the filing of this claim the case came before the Industrial Commission of Utah for formal adjudication for the first time. At the hearing the State Fund offered in defense that at the time of injury plaintiff was engaged in agricultural work, was not covered by the policy of insurance issued by it to the employer, and that he had not suffered total permanent disability.

The findings and conclusions of the commission follow:

"I. That Heber Harding brought this proceeding before the Industrial Commission of Utah by virtue of an application filed on the 27th day of October, 1932; that the applicant at the time of the hearing was 62 years of age and was married; that the applicant was injured on the 23rd day of June, 1927, while employed by the defendant, Provo Brick & Tile Company, herein referred to as the Company.

"II. That the Company is the owner of a tract of land consisting of about 100 acres situated a short distance North of Provo City, Utah. It is engaged in manufacturing brick and tile. The plant consists of several brick kilns together with the buildings necessary in the making of brick and tile. About 10 acres of the land is used for the purpose of manufacturing brick, and about 40 to 50 acres of the 100 acre tract is under cultivation and the balance is in river bed. At the time of the injury the Company had about 12 head of horses in use in its operations and the cultivated land was devoted to the raising of hay and grain. All hay and grain raised by the Company was fed to the horses used by the Company in its operations. The active season of the Company's operations is from March to November. The men regularly employed in the plant were used to harvest the hay raised on the farm land of the Company.

"III. The Company carried insurance on its employees with the defendant, State Insurance Fund. The employees of the Company were classified into groups and the applicant was classed as being engaged in Brick and Clay Products manufacture, including construction and reconstruction of sheds and kilns, and clay shale and sand digging. At the time of the injury the insurance policy did not cover farm labor. The insurance policy, marked Defendant's Exhibit 'A,' has attached several endorsements and the first endorsement carrying coverage for farm labor is for the year 1931.

"IV. The principal business in which the applicant was engaged was loading and unloading the kilns. On the day of the injury the applicant had been working in the brick kilns prior to eleven o'clock in the forenoon; he had helped haul one load of hay and was helping

with the second when he fell from the load of hay and sustained the injury complained of. That the total time the applicant worked in the hay each season would not exceed, on the average, more than three days. That as a result of the injury the applicant was disabled and was under the care of a physician and confined to the hospital for a considerable time. In view of the conclusions reached by the Commission we make no findings as to the extent of the disability or its permanence.

### "Conclusions.

"In view of the foregoing facts, the Commission concludes that the applicant at the time of the injury, was engaged in an agricultural occupation; that at the time of the injury the Provo Brick & Tile Company had not elected to come under the provisions of the Workmen's Compensation Act (Comp. Laws 1917, § 3061 et seq., as amended) as to its agricultural employees; and that the Commission is without jurisdiction to grant an award of compensation to the applicant.

"If an employer can refuse to provide insurance for its employees performing such agricultural work as was done by the applicant and can, by having the regular industrial employees do the farm work, claim the benefits of the act, then the insured Company would secure coverage for its employees for employment not embraced in the contract of insurance. Under the contract of insurance in this case, the State Insurance Fund undertook the coverage of the employees of the Company engaged in work specified in the contract.

"Nor can the insurance Carrier be held liable merely because the applicant was generally engaged in work covered by the policy. If the Company had elected to provide coverage for its agricultural employees the State Insurance Fund could have no ground to complain. It would then have contracted to meet just this situation. But the Company cannot decline to provide coverage for such employees while doing farm work and then protect itself by showing that it used its regular employees for farm work only when such work was necessary. On such occasions and during such employment they were no longer in the course of the employment for which they were insured."

The record discloses that the facts found are amply supported by evidence. Indeed, there is little conflict in the evidence. Other facts shown by the record but not included in the findings are these: That plaintiff filed a claim for benefits under the Workmen's Compensation Act with the State

Insurance Fund (Industrial Commission of Utah), wherein he stated he had sustained injury on June 23, 1927, while in the employ of the Provo Brick & Tile Company, and in answer to the question, "Describe in full how injury was sustained," said: "Fell off wagon hauling hay. Horses pulled wagon suddenly." The part of body injured was said to be, "shoulders and back." This claim was received and filed by the State Insurance Fund July 11, 1927. Premiums were paid by the employer to the State Fund based on the wages paid plaintiff for his full time, including the parts of two days engaged in hauling hay, payments being computed under the classification in the policy No. 4029, "Brick Manufacturing, not otherwise classified, including construction and reconstruction of kilns." The policy includes a classification No. 7205, drivers of animals and drivers' helpers (not otherwise classified)"; but there was no coverage for agricultural laborers. Plaintiff testified that on the day of the accident he was driver of the team and was on top the load of hay which was being loaded in the field when one of the workmen started toward the horses with a pitchfork in his hand and frightened the horses, causing him to fall off the load of hay. That after the accident, at the hospital, he had a conversation with the manager of the brick company respecting liability on account of the injury and was told by him that he would be cared for by way of compensation from the State Insurance Fund. That he understood at the time that by acceptance of compensation benefits he would be precluded from holding the company liable for negligence.

The State Fund interposed two defenses to plaintiff's application for continued compensation on account of alleged total permanent disability: (1) That plaintiff was not totally and permanently disabled, and (2) that at time of his injury he was not insured by the policy issued to the employer because he was then engaged in agricultural employment. The commission withheld decision on the question of disability, but held the plaintiff not covered by the policy of insurance because he was injured while in agricultural employment.

Two points are urged by plaintiff on this review: First, that the conclusions of the commission are erroneous as matter of law; and, second, that the State Insurance Fund was and is estopped from making the defense of nonliability under its policy because of having assumed liability and paid compensation for a period of five years.

First, as to estoppel: Ordinarily, in the absence of prejudice to the employee or of facts giving rise to estoppel, an insurance carrier, may, notwithstanding voluntary payment of compensation, the furnishing of hospital or medical care, the entry of appearance, or statement made that the policy covered the employee, urge the defense that the employee did not meet with an accident, or that the policy did not cover the employment, or that there was no causal connection between the injury and disability. *Taggart* v. *Industrial Commission,* 79 Utah 598, 12 P. (2d) 356; *Fidelity & Casualty Co.* v. *Baker,* 162 Okl. 10, 18 P. (2d) 894; *Neilson* v. *Crowder* (La. App.) 141 So. 832; *Ginn* v. *Forest Nursery* Co., 165 Tenn. 9, 52 S. W. (2d) 141. It would be unjust to both the employee and the insurance carrier if the law were that when the insurance carrier once undertakes to provide medical or other care for an injured workman it has lost all right to afterwards defend against what it believes to be an unjust or illegal claim. The insurance carrier cannot and ought not wait until full investigation has been made before providing necessary care and treatment for injured men. It, however, cannot by its conduct in paying compensation over a long period of time, and after either full investigation or opportunity and time for such inquiry, and after the claimant's position has changed and rights to which he was entitled are lost by lapse of time and the running of statutes of limitation, then interpose the defense that the policy of insurance did not cover the employee. In this case plaintiff timely filed his claim with the State Insurance Fund which is administered by the State Industrial Commssion. There was no hearing had or award made by the commission for the reason that the State Fund officials

acknowledged liability and regularly paid compensation. The filed claim truthfully states the cause of injury, including the time, place, and circumstances thereof. There was no deception practiced by claimant, nor, so far as the record discloses, any attempt to prevent full investigation. It may be fairly assumed that the manager and claims adjusters of the fund were better informed as to the terms and classifications of the policy, and whether claimant was covered thereby, than would be the claimant. He was informed by his employer that he was protected by compensation insurance. He was assured of this fact when compensation and hospitalization expenses were in fact paid. If this had not been so, he would have had a right of action against his employer which he might have prosecuted with success. Whether he would have succeeded or not, or whether his right of action might have been worth more or less than he has received from the State Fund, is immaterial. It is enough that he had such a right which he might have pursued in the courts if he chose to do so. By lapse of time the statute of limitations may now be successfully urged against any such action and it is lost to him. His condition has changed to his prejudice. He was lulled into a sense of security and led to believe that he could rely entirely on the State Insurance Fund for the full coverage allowed by law for such injuries as he suffered. Now he is told the insurance carrier was mistaken in assuming liability, that he was not covered by the policy, and the payments made to him were a mere gratuity. The circumstances are such that the State Insurance Fund is now estopped to urge that the employee was not within the protection of the policy of insurance issued by it to the Provo Brick & Tile Company.

Somewhat analogous, and affording support to the position we take, are the cases which hold that where an employer's liability insurance carrier assumes the defense against a claim for damages, even though it does not directly admit liability, as was done in this case, the carrier is estopped to deny liability that the employee was not covered

by the policy. *Rieger* v. *London Guarantee & Acc. Co.*, 202 Mo. App. 184, 215 S. W. 920; *Empire State Surety Co.* v. *Pacific Nat. Lbr. Co.* (C. C. A.) 200 F. 224; *Constitution Indemnity Co.* v. *Beckham*, 144 Okl. 81, 289 P. 776; *Royle Min. Co.* v. *Fidelity & Casualty Co. of N. Y.*, 161 Mo. App. 185, 142 S. W. 438; *Humes Const. Co.* v. *Philadelphia Casualty Co.*, 32 R. I. 246, 79 A. 1, 3, Ann. Cas. 1912D, 906.

Counsel for the State Insurance Fund have argued that when plaintiff stepped out of his employement as classified in the policy of insurance into an agricultural employment, not covered thereby, that there was then no contractual relationship upon which to base an estoppel. This sort of contention was well answered in *Humes Const. Co.* v. *Philadelphia Casualty Co.*, supra, as follows:

"The defendant has also urged that the principle of estoppel cannot be applied to extend the liability of the defendant beyond the terms of the policy and to furnish indemnity to the insured for loss arising from an accident to a person not an employee. The doctrine of quasi estoppel is broad enough to include such a result, and its application is not restricted, as the defendant urges, to cases where the conduct of the insurer precludes him from insisting upon a forfeiture for the violation of a condition contained in the policy. It is the nature of this principle to extend liability. It is not invoked for the purpose of enforcing a true obligation or one that is clearly defined by the terms of a contract. In this consideration it is not material what the defendant's real liability under the policy was, for by its own election of positions it is now precluded from asserting that its liability was not in accordance with its apparent admissions."

In assuming liability and paying compensation after being informed by the filed claim that claimant's injury was sustained by falling off a wagon hauling hay, the insurance carrier placed its own construction on the scope of the policy and the meaning of it. *Fullerton* v. *United States Casualty Company*, 184 Iowa, 219, 167 N. W. 700, 6 A. L. R. 367. We are inclined to the view that such construction was the right one. An employee injured while performing an act which is fairly incident to the prosecution

of the business, trade, or occupation of the employer and appropriate in carrying it forward and providing for its needs, is not to be barred from the benefits of compensation because the act is not wholly embraced in the precise and characterization process or operation made the basis of the group in which employment is claimed. *Anderson* v. *Last Chance Ranch Co.,* 63 Utah 551, 228 P. 184, 186; *Matter of Larsen* v. *Paine Drug Co.,* 218 N. Y. 252, 112 N. E. 725. Hauling hay to be fed the horses necessarily used in connection with the brick and tile manufacturing business is fairly incidental to the business or occupation of the employer. True it may also be incidental to farming operations, depending on the circumstances. This plaintiff was loading and hauling hay. He was the teamster. The hay was already grown, cut, and harvested. Had he been hauling baled hay from a hay and grain store to the brick plant for use there and was injured by falling off the load, he certainly could not be said to have been engaged in agricultural employment at the time. So, likewise, if he were hauling hay from the field of another at the request of his employer who had purchased the hay in the field or stack.

We are told the commission correctly concluded plaintiff was engaged in agricultural work because of the decision in *Ocean Acc. & Guarantee Co.* v. *Industrial Commission,* 69 Utah 473, 256 P. 405, 407. In that case the court held that a person or corporation may be engaged in more than one business, trade, or occupation, and that when engaged in farming operations as a business its employees engaged exclusively in such occupation if injured are not compensable unless the employer elects to provide coverage and complies with the requirements of the law with respect thereto. To similar effect is *Murray* v. *Strike,* 76 Utah 118, 287 P. 922.

The present case is clearly distinguishable from *Ocean Acc. & Guarantee Co.* v. *Industrial Commission,* supra, notwithstanding the general situation was somewhat similar in that the employer there conducted a sand and gravel business and also operated a farm on adjacent property. The

employee who was injured had never been employed in the sand and gravel business, but was employed exclusively as an agricultural laborer and was injured while so engaged. The court drew the proper distinction when it said:

"This is not a case where the employee temporarily digresses from his usual work, but a case where the employer is engaged in two occupations, one coming under the Workmen's Compensation Act and one that does not come under the act unless the employer so elects," and again, "The evidence is positive and without conflict that the Ogden Realty & Investment Company and its receiver were engaged in the business, trade, or occupation of farming, and that the deceased, at the time of his death and prior thereto, was exclusively engaged as an agricultural laborer."

The plaintiff here was regularly engaged as an employee of the brick plant and only incidentally and on rare occasions hauled hay. On the day of the accident he had worked in the brick kiln until about 11 o'clock in the morning and had hauled but one load of hay prior to the one from which he fell. In the Ocean Acc. & G. Co. Case the employee was exclusively employed in farming operations and had no relation whatever with the sand and gravel business, although the hay was to be fed horses used in the sand and gravel business.

In *Anderson* v. *Last Chance Ranch Co.*, supra, the court held that under the provisions of the Workmen's Compensation Law the controlling factor in determining the nature of the employment and the right to compensation was the general business of the employer, and since the general business—that is, "the usual course of trade, business, or occupation of his employer," to use the language of the statute—was agriculture, the injured employee was not within the protection of the Compensation Law even though he was engaged in the construction of a building; the construction of the foreman's home being incidental to the farming operations of the employer. So here the hauling of hay being incidental to the operation of the brick plant and the employee injured being regularly engaged at the plant, the work

of the moment was within the characterization of the general business of the employer—that of brick manufacture.

On account of the conclusions reached by the commission, no findings were made on the issue of whether or not plaintiff sustained total permanent disability, and that question is not now before us.

The order of the Industrial Commission dismissing plaintiff's application for adjustment of claim is set asde and annulled, and the cause remanded for further proceedings.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.