Stanley L. LARSON, Plaintiff
and Appellant,

v.

WYCOFF COMPANY, a Utah Corporation, Galbraith & Green, Inc., a Utah Corporation, and The Lafayette Life Insurance Company, an Indiana Corporation, Defendants and Respondents.

No. 16970.

Supreme Court of Utah.

Jan. 22, 1981.

---

* CROCKETT, Justice, concurred in this case prior to his retirement.

Richard G. MacDougall, Salt Lake City, for plaintiff and appellant.

Richard H. Moffat, Salt Lake City, for Wycoff.

James R. Brown, Salt Lake City, for Galbraith & Green.

John A. Snow, Salt Lake City, for Lafayette Life.

HOWE, Justice:

Plaintiff brought this action against his employer, the administrator of its medical insurance program, and the provider of its group life insurance coverage to challenge their denial of insurance benefits. The district court granted summary judgment in favor of defendants, and plaintiff appeals.

The insurance coverage in question was incident to plaintiff's employment with defendant Wycoff Company. Plaintiff was first employed by Wycoff in March 1977 as a part-time dock worker. He became a full-time employee in July 1977 and continued in that status until September 1978 when he started to attend diesel mechanic's school and transferred to Wycoff's diesel shop as a regular part-time employee.

Wycoff provided two insurance programs for its full-time employees. One was a self-funded health and accident insurance program administered for Wycoff by Gal-

braith & Green, Inc. The other was a life insurance program based on a group policy issued by Lafayette Life Insurance Company; premiums were paid by Wycoff with no employee participation. The insurance benefits were detailed in a "red book" which was provided to all full-time employees. Regarding eligibility for coverage, the "red book" stated:

All active, full-time employees may be included in the company's group benefit plan the first of the month following completion of 30 days of service, provided they complete an enrollment card as required by the personnel office and they are working as full-time employees 40 hours or more per week.

Plaintiff received and read the handbook when he became a full-time employee, and he completed the application forms required for him and his dependents to be insured under the two programs. When plaintiff was considering a transfer to the diesel shop he discussed his concern about his continuing eligibility for employee benefits with his supervisor. The supervisor indicated that plaintiff would retain his benefits if he would wait for a transfer rather than quit his job on the dock and start as a new employee in the diesel shop. Plaintiff also inquired of the diesel shop foreman as to his insurance status. The foreman said he would check on the matter, but the two had no further conversation on the subject. Plaintiff did not discuss the matter with a personnel officer or any other official of the company. When he transferred to the diesel shop, he reduced the number of hours he worked each week from 40 to 25–30. In his deposition plaintiff stated, "I didn't really consider myself on a part-time basis, although I suppose that's what you could call it."

After plaintiff's transfer, he continued to submit medical expense claims to Wycoff. They were accepted by Galbraith & Green until January 1979, and a total of $1,188.15 was paid. An additional draft for $4,450.09 was issued on which payment was later stopped. The medical expenses were incurred primarily for the treatment of plain-tiff's young son, who died on January 7, 1979. Plaintiff then claimed he was entitled to $2,000 in dependent life insurance proceeds under the Lafayette policy, but he was informed he was not eligible for those benefits.

Plaintiff brought suit against, Wycoff, Galbraith & Green, and Lafayette Life Insurance Company to recover the unpaid medical expenses and the life insurance proceeds, but the trial court granted summary judgment in favor of all three defendants.

■■■ Summary judgment is proper when the pleadings and other documents before the court establish that there is no basis for awarding the relief sought by a litigant. *Tanner v. Utah Poultry & Farmers Cooperative*, 11 Utah 2d 353, 359 P.2d 18 (1961); Rule 56(c), Utah Rules of Civil Procedure. Because summary judgment is a harsh remedy which deprives a person of a full trial of his case, this Court will review the facts in a light most favorable to the party against whom summary judgment was granted. *Richards v. Anderson*, 9 Utah 2d 17, 337 P.2d 59 (1959). Nevertheless, when the best showing a plaintiff could make would not entitle him to recover under the law, summary judgment is appropriate and serves its intended purpose of avoiding fruitless court proceedings with their attendant costs in time and money.

■■■ Plaintiff clearly could not have prevailed on his claim against Lafayette Life Insurance Company. Its obligation to pay death benefits was premised upon the payment of premiums by Wycoff for its covered employees. An insurer has the right to cancel coverage when an employer discontinues payment for an employee insured under a group life insurance policy, whether or not the employee contributes to the cost of the premiums. See *Couch v. Connecticut General Life Insurance Co.*, Fla.App., 216 So.2d 72 (1968); Annot., 68 A.L.R.2d 215 (1959), and cases cited therein. The last premium paid on behalf of plaintiff was the payment due on November 1, 1978, and according to the policy terms, plaintiff's eligibility for benefits terminated at the end of November, although a 31-day

grace period would have extended coverage to December 31, 1978. Since the death of plaintiff's son occurred after the termination of his insurance coverage, plaintiff was not entitled to the payment of dependent life insurance benefits by Lafayette, and Lafayette had no liability to plaintiff.

■ In support of his claim against Wycoff, plaintiff contends that despite the fact that part-time employees are not included in Wycoff's insurance program, he remained covered until he received notification that he was no longer eligible. He was told of his ineligibility in February 1979, five months after he transferred and was no longer employed full-time. He cites *Rouleau v. Continental Life Insurance & Investment Co.*, 45 Utah 234, 144 P. 1096 (1914), for the proposition that a dispute regarding the requirement of notice of cancellation of insurance is a question of fact for the jury so as to preclude summary judgment. However, in that case the issue was not whether the policy required notice to the insured before coverage could be terminated, as raised by plaintiff in the instant case. Rather, a jury question was found to have been properly presented based on conflicting evidence as to whether the plaintiff ever received a letter of a certain date giving notification of cancellation.

This Court in *American Western Life Insurance Co. v. Hooker*, Utah, 622 P.2d 775 (1980), stated the general proposition that "in the absence of a policy provision or statute requiring notice of premium due, or proof of a course of dealing establishing a custom of sending such notice, notice need not be given as a prerequisite to a policy lapsing for nonpayment of premium." Plaintiff has cited no policy provision requiring notice to employees terminating their full-time status who thereby become ineligible for Wycoff's insurance coverage. The employee handbook clearly stated that the insurance benefits were offered only to regular full-time employees; plaintiff was therefore on notice as to the termination of his participation in the insurance plans.

*Ogden v. Continental Casualty Co.*, 208 Kan. 806, 494 P.2d 1169 (1972), cited by plaintiff, does not support his contention that there was a material issue as to his right to formal notice of termination. There the decision that employees were entitled to notice of any modification or cancellation of the insurance contract was based on the fact that the employees made contributory payments for the insurance premiums. The Kansas court stated:

An analysis of the cases from other jurisdictions discloses that one circumstance of the insurance arrangement which appears to have an important bearing upon the decision as to the necessity of notice is whether or not the employee contributes to the payment of insurance premiums.

The rationale of the decisions is that where the employee pays a portion of the premiums he has valuable rights in the policy and therefore notice should be given him of any modification of the contract which might [affect] those rights. [494 P.2d at 1172.]

As a noncontributory participant with coverage limited to his period of full-time employment with Wycoff, plaintiff cannot premise his claim of continuing liability on failure to give notice of termination.

Plaintiff argues further that an insured must be informed of insurance termination so that he may exercise any conversion privilege available under the terms of the policy. In this case, the time for exercising the conversion option contained in the group life insurance policy expired before plaintiff received personal notice of his ineligibility. As stated above, however, plaintiff was adequately informed of the termination provisions of his insurance coverage, and he was responsible for determining his insurance needs and providing for them.

Plaintiff cites §§ 31-20-11 and 31-23-21, Utah Code Ann. (1953), as amended, as evidencing the Legislature's intent to ensure an opportunity for continued insurance coverage for persons terminated under group plans. These provisions, however, were enacted in 1979, after plaintiff's termination,

and do not have retroactive application to the instant case.

Plaintiff also contends that the defendants should be estopped from denying liability for plaintiff's medical expense claims and dependent life insurance proceeds. He asserts he was unable to exercise the conversion privilege provided for in the Lafayette policy because he reasonably relied on the assurances of his supervisor and the fact of continued payment of claims and presumed therefrom that he was still eligible for employee insurance benefits. Plaintiff maintains that Wycoff should be bound by the statement of his supervisor that his benefits would continue after his transfer.

■ The general rule governing declarations of corporate agents is set out in 2 Fletcher Cyclopedia Corporations Sec. 733 as follows:

> Declarations or admissions of an officer or agent of a corporation are not binding upon it, nor admissible in evidence against it for any purpose, unless they were made by the officer or agent in the course of a transaction on behalf of the corporation, and within the scope of his authority, or unless they were expressly authorized by the corporation, or have since been ratified by it.

Although plaintiff characterizes the supervisor as an "agent" of Wycoff, he has not presented any facts to support his assertion that in discussing insurance benefits the supervisor was acting as an officer or agent in the course of a transaction on behalf of Wycoff or within the scope of his authority. Wycoff was therefore not bound by the statements made by plaintiff's supervisor. Cf. *Sorenson v. Hartford Accident & Life Insurance Co.*, Utah, 585 P.2d 440 (1978), in which this Court rejected the appellant's claim that the erroneous representation of continuing coverage by secretaries of the employer constituted a material change in the policy made by agents of the insurer.

This Court addressed the issue of estoppel against an insurance carrier which made payments for which liability was later denied in *Harding v. Industrial Commission of Utah*, 83 Utah 376, 381, 28 P.2d 182, 184 (1934), and stated:

Ordinarily, in the absence of prejudice to the employee or of facts giving rise to estoppel, an insurance carrier, may, notwithstanding voluntary payment of compensation, the furnishing of hospital or medical care, the entry of appearance, or statement made that the policy covered the employee, urge the defense that the employee did not meet with an accident, or that the policy did not cover the employment, or that there was no causal connection between the injury and disability. It would be unjust to both the employee and the insurance carrier if the law were that when the insurance carrier once undertakes to provide medical or other care for an injured workman it has lost all right to afterwards defend against what it believes to be an unjust or illegal claim.

The facts adduced in connection with defendants' motion for summary judgment show that Wycoff was without question entitled to discontinue the payment of medical claims submitted by plaintiff after he became a part-time employee. The payment of some of those claims does not of itself estop Wycoff from discontinuing coverage under a policy that terminated by its own terms.

■ A party claiming an estoppel cannot rely on representations or acts if they are contrary to his own knowledge of the truth or if he had the means by which with reasonable diligence he could ascertain the true situation. *Coombs v. Ouzounian*, 24 Utah 2d 39, 465 P.2d 356 (1970); see also *Cook v. Cook*, 110 Utah 406, 174 P.2d 434 (1946). Furthermore, a determination of the issue of estoppel is not dependent on the subjective state of mind of the person claiming he was misled, but rather is to be based on an objective test, i. e., what would a reasonable person conclude under the circumstances. *Big Butte Ranch, Inc., v. Holm*, Utah, 570 P.2d 690 (1977); *Corporation Nine v. Taylor*, 30 Utah 2d 47, 513 P.2d 417 (1973).

In this case Wycoff paid over $1,000 in medical claims after plaintiff transferred to

part-time employment in September 1978. An additional draft to cover medical expenses issued in January 1979 was recalled and no further payment made. Plaintiff argues that he was prejudiced as a result of these payments, and that, as stated in *Harding, supra*, an employer

> cannot by its conduct in paying compensation over a long period of time, and after either full investigation or opportunity and time for such inquiry, and after the claimant's position has changed and rights to which he was entitled are lost by lapse of time and the running of statutes of limitation, then interpose the defense that the policy of insurance did not cover the employee.
>
> [28 P.2d at 184.]

We cannot say that Wycoff made payments "over a long period of time" so as to prejudice plaintiff's position in light of his knowledge of the conditions of insurance coverage provided by his employer. It was not reasonable for plaintiff to rely on additional payments as assuring the continuation of his coverage. He did not discuss his status in relation to employee benefits with anyone in a position to speak for the company, but he had read the handbook and knew insurance benefits were available only to full-time employees. While he undoubtedly welcomed the payments mistakenly made by Wycoff, he should have known that he was no longer eligible and that an error may have been made. The trial court correctly rejected plaintiff's argument that Wycoff should be estopped from denying its obligation for the insurance benefits claimed by plaintiff in this action.

Because there is no genuine factual dispute as to the provisions governing insurance coverage for Wycoff employees or as to plaintiff's knowledge of those provisions, the summary judgment in favor of defendants is affirmed. No costs awarded.

HALL, STEWART and CROCKETT,* JJ., and MAURICE HARDING, Retired District Judge, concur.

* CROCKETT, Justice, concurred in this case before his retirement.

MAUGHAN, C. J., does not participate herein, HARDING, Retired District Judge, sat.