**Cheryl L. RUSHTON, Plaintiff,**

v.

**GELCO EXPRESS and Employers Mutual Liability of Wausau, and the Industrial Commission of Utah, Defendants.**

No. 860095.

Supreme Court of Utah.

Dec. 30, 1986.

Mary C. Corporon, Salt Lake City, for plaintiff.

Robert W. Brandt, Stephanie A. Mallory, Salt Lake City, for defendants.

DURHAM, Justice:

Plaintiff filed an application with the Industrial Commission ("Commission") claiming both temporary total and permanent partial disability as a result of injuries she sustained in a fall. The administrative law judge ordered payment of reasonable medical expenses related to plaintiff's back injury, and benefits for temporary total disability for the period of December 1983 through August 1984, but denied plaintiff's claims for temporary total disability for the period of August 1984 through November 1984, and for permanent partial disability. The Board of Review of the Industrial Commission denied plaintiff's subsequent motion for review, and plaintiff appeals that denial. We affirm.

On December 27, 1983, plaintiff slipped on some ice in her employer's parking lot, fell to her hands and knees, and sustained an injury to her back. Plaintiff's employer admits the injury arose out of or in the course of employment. Plaintiff completed her work shift after the fall and reported the accident at the end of the day. Plaintiff later began to experience pain in her neck, upper back, and arms, for which she sought treatment from several specialists. Plaintiff received treatment from three specialists other than Dr. Kimball, whom she identifies in her brief as her examining physician. The three specialists conducted several tests, all of which produced normal results despite plaintiff's continued complaints of worsening pain.

In April 1984, Dr. Gordon R. Kimball, an orthopedics specialist, began treating plaintiff for the injuries to her back and neck. Dr. Kimball's report of January 5, 1985, indicates that on her first visit, plaintiff's examination produced generally normal results except that an x-ray taken at that time revealed a slight reversal of the normal cervical ordodic curve. The report also indicates that plaintiff first complained to Dr. Kimball about pain in her knees in October of 1984. X-rays showed that plaintiff suffered from a knee condition. Dr. Kimball's report states: "[T]here might be some argument ... whether or not the accident caused this problem although I suspect that it did." Finally, the report indicates that if plaintiff had any permanent partial disability, it would be rated at no more than a five percent permanent partial disability of the whole person for a "chronic cervical sprain" and two percent permanent partial impairment for each knee.

On September 6, 1984, plaintiff filed an application for a hearing with the Industrial Commission, seeking compensation for a temporary total physical impairment from the date of the accident through November 30, 1984,[1] and claiming a permanent partial

1. The administrative law judge's supplemental order and plaintiff's brief conflict on the period

for which plaintiff sought compensation for temporary total disability. The supplemental

impairment of the whole person. The administrative law judge referred the matter to a medical panel, which found that plaintiff had suffered a temporary total physical impairment from the time of the accident through August 1984 and that plaintiff had a two percent permanent partial disability due to her knee condition. The panel report also indicates that the accident may have activated a symptomatic phase of a preexisting knee condition and caused contusions, but that the knee condition was most likely congenital and developmental rather than related to the December 1983 accident.

In his supplemental order, the administrative law judge granted plaintiff an award for total temporary disability for the period of December 28, 1983, through August 31, 1984, but denied any award for total temporary disability for any period beyond August 1984 or for permanent partial disability. He also denied plaintiff recovery from the Second Injury Fund for the knee condition based on his finding that the accident only temporarily aggravated that condition. Finally, the administrative law judge awarded plaintiff attorney fees at twenty percent of the total amount of the award, twenty percent of the "balance owing," or whichever of the two was "appropriate."

■ Plaintiff contends that the evidence does not support the administrative law judge's denial of total temporary disability compensation for the period from August 31, 1984, through November 30, 1984,[2] or his refusal to find that the accident caused plaintiff's knee condition. On an appeal from a decision by the Commission, this Court will not disturb the findings and orders of the Commission unless they are arbitrary and capricious, and they are arbitrary and capricious when they are contrary to the evidence or without any reasonable basis in the evidence. *See Blaine v. Industrial Commission,* 700 P.2d 1084, 1086 (Utah 1985); *Savage v. Industrial Commission,* 565 P.2d 782, 783 (Utah 1977). Plaintiff argues, in essence, that the findings in this case are arbitrary and capricious because the administrative law judge adopted the findings of the medical panel rather than those of Dr. Kimball, plaintiff's treating physician. According to plaintiff, the administrative law judge should have been required as a matter of law to give preference to the treating physician's findings.[3] Because we feel that such a rule would restrict the fact-finding role of the Commission, as that role has been defined by statute and case law, we refuse to adopt it.

■ U.C.A., 1953, § 35–1–88 permits the Commission to receive all "relevant and material evidence," including Commission-appointed investigators' reports and attending or examining physicians' reports. U.C.A., 1953, § 35–1–85 requires the Commission to make findings of fact and provides that those findings are conclusive. Moreover, decisions from this Court have repeatedly reaffirmed the fact-finding role of the Commission and have stated that the Commission must look at *all* relevant evidence in reaching its findings without being restricted to giving evidence from specific witnesses more weight than that from other witnesses. *See Shipley v. C & W Contracting Co.,* 528 P.2d 153, 155 (Utah 1974) (the Commission is not necessarily

order indicates that plaintiff sought compensation from the time of the accident to the "present," presumably December 31, 1985, the date the administrative law judge signed the order. The brief indicates, however, that plaintiff sought compensation for the period from the accident to November 30, 1984, only.

2. We note that, in the report cited in plaintiff's brief, Dr. Kimball neither specifically discusses total temporary disability nor refers to extending the period for such disability to November 30, 1984. The report does indicate that plain-

tiff's symptoms continued unchanged through his October 30, 1984 examination, but this is the only reference in the report that could suggest an extension of the period.

3. Plaintiff bases her argument on her assertion that Dr. Kimball was the only treating physician. This assertion, however, ignores the evidence in the record indicating that plaintiff received treatment for her back injury from three physicians other than Dr. Kimball: Drs. Vanderhooft, Thoen, and Reichert.

bound to accept the opinions of any witness or witnesses, expert or otherwise) ; *Moller-up Van Lines v. Adams*, 16 Utah 2d 235, 240, 398 P.2d 882, 885 (1965) (the Commission had both the prerogative and duty to view the entire testimony of the medical panel doctor and believe those statements that impressed it). As the foregoing authorities indicate, the Commission is the principal fact finder and, as such, may review all relevant evidence. *See generally Mellen v. Industrial Commission*, 19 Utah 2d 373, 374, 431 P.2d 798, 799 (1967). Adopting the position advocated by plaintiff would necessarily narrow the evidence the Commission could rely upon and could result in increasing the potential for bias in proceedings before the Commission. A claimant could hire a physician to testify favorably even though other evidence did not support the physician's testimony. If we adopted plaintiff's position, the administrative law judge could not consider evidence contradicting that of a private physician no matter how convincing that evidence might be. Of course, use of a medical panel does not eliminate all potential for bias. The administrative law judge appoints the members of medical panels, and they may subconsciously consider this in making findings. The claimant may, however, present other evidence. The source of medical opinion, and any potential for bias inherent in the source, should of course be a factor in the process of weighing the evidence, but we see no reason for creating a presumption in favor of particular evidence.

 Having decided that the administrative law judge was not required as a matter of law to accept the findings of plaintiff's treating physician and reject those of the medical panel, we next determine if the Commission's findings have a reasonable basis in the evidence and therefore are not arbitrary and capricious. The letters of Drs. Reichert, Thoen, and Vanderhooft all indicate that they believed plaintiff's cervical strain had either completely or nearly resolved at the time they examined her and that the objective test results indicated no continued disability. In a letter dated Jan-

uary 19, 1984, less than one month after the injury, Dr. Vanderhooft indicated that his examination of plaintiff revealed some evidence of muscle spasm in the neck area, but that the neck was nearly normal, that he thought plaintiff should return to work as soon as possible, and that the objective findings did not match the subjective symptoms. In a letter dated March 26, 1984, Dr. Reichert states that plaintiff's tests and examination were within normal limits and that plaintiff could be released to full work duty on April 16, 1984, nearly four and one-half months earlier than the end of the period of temporary total disability. In a letter dated July 17, 1984, Dr. Thoen states that plaintiff could return immediately to light duty work, that plaintiff could return to work without restrictions within four weeks if she engaged in a physical fitness program to rebuild her strength, that the cervical strain had resolved, and that no permanent partial disability existed. Finally, Dr. Kimball stated in his October 3, 1985 report that the tests did not bear out his clinical findings concerning the back injury and that those findings were therefore based on the subjective symptoms reported by plaintiff.

The administrative law judge also had the report of the medical panel on which to rely. The panel based its report not only on its examination of and interview with plaintiff, but also on the reports, test results, and x-rays from the previous examinations of plaintiff's treating physicians. The panel's report indicates that the cervical strain had resolved and that the knee condition appeared developmental and congenital rather than a result of the accident. Even Dr. Kimball's earlier January 5, 1985 report observes that some "room for argument" existed concerning the etiology of the knee condition. Thus, the record contains substantial evidence supporting the administrative law judge's decision.

Plaintiff next contends that, even if the administrative law judge did not err in adopting the medical panel's report over that of Dr. Kimball, nothing in the evidence supports his denial of compensation from

the Second Injury Fund for the knee pain. Specifically, plaintiff argues that nothing in the record supports the administrative law judge's finding that the accident only temporarily aggravated the knee condition. The panel's May 11, 1985 report indicates that the accident may have caused a "symptomatic phase" in the development of the knee condition. The report also states that, although plaintiff suffered from a two percent permanent partial impairment, the December 1983 accident had not contributed to that impairment. Thus, the two findings read together suggest at most only a temporary aggravation of a preexisting condition.

Finally, plaintiff argues that this Court should clarify the administrative law judge's order concerning the amount of attorney fees to which plaintiff is entitled. In his supplemental order, the administrative law judge granted plaintiff attorney fees in the amount of "20% of the aforesaid award or 20% of the balance owing, or whichever is appropriate in this case." Rule 1.1.10 of the Workers' Compensation Rules and Regulations requires granting attorney fees according to the percent of weekly compensation generated in accordance with a schedule provided in that rule. We remand the case for a determination in accordance with the above-cited rule of the proper amount of attorney fees.

Affirmed in part and remanded in part.

HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.