**Douglas R. OLSEN, Petitioner,**

**v.**

**INDUSTRIAL COMMISSION OF UTAH, Tyger Construction, Wausau Insurance Company, and Second Injury Fund, Respondents.**

**No. 880407–CA.**

Court of Appeals of Utah.

June 23, 1989.

---

Jay A. Meservy, Salt Lake City, for petitioner.

Michael E. Dyer and Brad C. Betebenner, Salt Lake City, for respondents Tyger Const. and Wausau Ins. Co.

Erie V. Boorman, Salt Lake City, for respondent Second Injury Fund.

Before DAVIDSON, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Petitioner Douglas Olsen appeals from the Industrial Commission's decision denying him workers' compensation benefits for injuries he suffered as a result of two separate heart attacks. We affirm.

## FACTS

Petitioner was hired by Tyger Construction as a laborer in April 1984. It is undisputed that prior to his employment with Tyger, petitioner had a family history of heart attacks, diabetes, and high blood pressure, and a personal history of smoking approximately one pack of cigarettes per day since age 16, and high blood cholesterol and triglyceride levels, all of which predisposed petitioner to heart disease. On October 29, 1984, petitioner suffered a heart attack while at work. He was subsequently diagnosed as having suffered an acute anterior wall myocardial infarction. Petitioner was hospitalized for several days, and received uncontested temporary total disability benefits for the period October 30, 1984, through December 2, 1984. On December 3, 1984, petitioner was released by his attending physician and informed that he could return to work without limitation.

In June 1985, petitioner was assigned by Tyger to supervise several concrete plants. Between June and October of 1985, petitioner claimed he worked sixty hours per week. By November 1985, petitioner was working seven days a week until the plants supervised by petitioner were shut down on November 22, 1985. Following the shut down, petitioner and his wife traveled to Colorado for a vacation. On December 2, 1985, petitioner suffered a second heart attack. The second heart attack was diagnosed as a myocardial infarction involving the inferior left ventricle wall and rendered him permanently and totally disabled.

Following the second heart attack, petitioner filed two claims for disability benefits. One claim requested additional benefits for the 1984 heart attack, the second for injuries suffered as a result of the 1985 heart attack. The administrative law judge conducted an evidentiary hearing and referred its summation of the evidence to a medical panel doctor. Although there was conflicting medical evidence in the record, the administrative law judge ultimately adopted the findings expressed by the medical panel doctor, Dr. Preece. Based on these findings, the administrative law judge denied both claims. The Commission affirmed the administrative law judge's determination concluding: 1) petitioner's 1985 heart attack was not related to or precipitated by his 1984 heart attack, and 2) neither the 1984 heart attack nor the 1985 heart attack was medically related to petitioner's employment activities.

Petitioner appeals from the Commission's decision claiming: 1) both heart attacks were compensable industrial accidents and the Commission's determination that no medical causation existed was arbitrary and capricious, and 2) since Tyger paid petitioner disability benefits for the 1984 heart attack, it is estopped from challenging its liability in these proceedings, and the Commission erred in failing to so determine.

## MEDICAL CAUSATION

■ Petitioner claims the medical testimony demonstrates that both his 1984 and 1985 heart attacks were medically related to his employment activities. Legal causation is not disputed. Thus, our review is limited to whether the Commission's determination that petitioner's heart attacks were not medically related to his employment activities was arbitrary and capricious or "without any reasonable basis in the evidence" to support it. *See, e.g., Rushton v. Gelco Express,* 732 P.2d 109, 111 (Utah 1986).[1]

To demonstrate "medical causation," petitioner must introduce evidence establishing "that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability." *Allen v. Industrial Comm'n,* 729 P.2d 15, 27 (Utah 1986). For this purpose, petitioner proffered the written medical opinions of his two attending physicians, Dr. Heuser, a cardiologist, and Dr. Davidson, a family practitioner. Dr. Davidson concluded petitioner's 1984 heart attack was related to his employment activities and the 1985 heart attack was a recurrence of the 1984 heart attack. Dr. Heuser similarly concluded that the heart attacks were related but did not express an opinion concerning their relationship to petitioner's work activities.

However, after examining the petitioner and reviewing the administrative law judge's summation of the evidence and petitioner's medical records, Dr. Preece, the medical panel doctor, concluded petitioner's heart attacks resulted from preexisting medical conditions, and were not related to his employment activities. Specifically, Dr. Preece concluded the petitioner's 1984 heart attack resulted from a blocked coronary artery. Dr. Preece believed the blockage was due to preexisting heart disease, and not due to any physical work the petitioner performed on the day of his attack. Dr. Preece similarly concluded the 1985 heart attack was a result of premature

---

1. These proceedings were commenced before the effective date of the Utah Administrative Procedures Act, Utah Code Ann. §§ 63–46b–1 to –22 (1988 Supp.). For a recent case discussing the Act's effect on the standard for reviewing agency findings of fact, *see Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 66–68 (Utah Ct.App.1989).

atherosclerosis and not petitioner's work activities preceding the attack. In his letter to the administrative law judge, Dr. Preece wrote:

> In summary, ... we have an early middle-aged male who is unfortunate enough to have had two separate myocardial infarctions. He obviously has premature atherosclerosis and we would attribute this to his major risk factors including the cigarette smoking, the elevated blood cholesterol, and particularly the positive family history for coronary artery disease.

■ Petitioner's claim, therefore, is that the Commission acted arbitrarily and capriciously by discounting the opinions of his experts and adopting the opinion of the medical panel.[2]

The Utah Supreme Court has clearly stated that where the medical evidence is conflicting, "it is the responsibility of the administrative law judge to resolve factual conflicts." *Lancaster v. Gilbert Dev.*, 736 P.2d 237, 241 (Utah 1987). Moreover, we do not deem the Commission's findings arbitrary and capricious "simply because the Commission adopted the findings of the panel rather than those of the independent physicians...." *Rekward v. Industrial Comm'n*, 755 P.2d 166, 168 (Utah Ct.App. 1988). Accordingly, we find there was competent, comprehensive medical evidence in the record upon which the Commission could rely in concluding that petitioner's heart attacks were not medically related to his employment activities, and thus we reject this aspect of petitioner's challenge.

## REOPENING LIABILITY FOR 1984 HEART ATTACK

Petitioner also filed a claim for additional benefits relating to the 1984 heart attack, claiming that since he had received the temporary disability benefits, his condition had deteriorated. *See* Utah Code Ann. § 35–1–78 (1988). The Commission, again relying on the opinions of the medical panel, rejected petitioner's claim. Instead, the Commission concluded the 1984 heart attack was not a compensable industrial accident because it was not medically related to petitioner's employment activities. Petitioner claims the Board was precluded from "reopening" the initial question of compensibility of the prior 1984 heart attack because Tyger had voluntarily paid benefits. Therefore, petitioner argues Tyger is estopped from now denying that his injury was compensable under the Workers' Compensation Act. Petitioner further argues the Commission's review should have been limited to a consideration of whether his condition had deteriorated, which if answered in the affirmative, entitled him to additional disability benefits.

■ Petitioner's position fails for two reasons. First, the mere fact that an employer pays benefits initially without contesting liability does not mean it is thereafter, as a matter of law, barred from contesting liability. *See, e.g., Crow v. In-*

---

**2.** Petitioner also claims the Commission improperly afforded greater weight to the medical panel's opinion. Specifically, the Commission wrote:

> In cases where medical opinion controverting that of the medical panel is submitted, the Commission has in the past maintained a fairly consistent practice of deferring to the medical panel absent good reason shown why the medical panel report is insufficient or biased. In the instant case, the medical panel doctor is a well respected specialist in cardiology and his report is clear and unequivocal regarding his conclusions that the infarction was caused by pre-existing conditions and not exertional activity. Although Dr. Heuser and Dr. Davidson make contrary conclusions, the reasons for those conclusions are not stated. In contrast, the medical panel doctor's conclusions are explained with a listing given [sic] of the numerous pre-existing conditions suffered by

the applicant predisposing him to cardiac arrest.

Petitioner claims the Commission granted the medical panel's expert opinion a presumption of correctness, contrary to Utah law. *See, e.g., Rushton v. Gelco Express*, 732 P.2d 109, 111–12 (Utah 1986). We agree the Commission's statements are inappropriate. The Commission must always weigh conflicting evidence in light of materiality, credibility, and competency, among other recognized considerations, without any preconceived deference to either side. However, we are not persuaded the Commission's unfortunate dicta affected its decision. Taken in the context of the Commission's further elaborations, it is clear that the Commission also considered acceptable factors, and found the medical panel opinion more credible and based on specific preexisting conditions suffered by petitioner.

*dustrial Comm'n,* 104 Utah 333, 140 P.2d 321, 321–22 (1943); *Harding v. Industrial Comm'n,* 83 Utah 376, 28 P.2d 182, 184 (1934); *Taggart v. Industrial Comm'n,* 79 Utah 598, 12 P.2d 356, 357 (1932). In *Harding,* the Utah Supreme Court wrote:

> Ordinarily, in the absence of prejudice to the employee or of facts giving rise to estoppel, an insurance carrier may, notwithstanding voluntary payment of compensation, the furnishing of hospital or medical care, the entry of appearance, or statement made that the policy covered the employee, urge the defense that the employee did not meet with an accident, ... or that there was no causal connection between the injury and disability.

28 P.2d at 184. Petitioner has failed to allege sufficient facts to establish that Tyger should be estopped from contesting its liability for the 1984 heart attack. For instance, petitioner has not demonstrated that he changed his position or relinquished any rights as a result of receiving temporary disability payments. *Cf. Crow,* 140 P.2d at 321.

Moreover, adopting the position urged by petitioner would encourage employers to contest all employment related injuries to avoid later being estopped from raising their claims.

> It would be unjust to both the employee and the insurance carrier if the law were that when the insurance carrier once undertakes to provide medical or other care for an injured [employee] it has lost all right to afterwards defend against what it believes to be an unjust or illegal claim. The insurance carrier cannot and ought not wait until full investigation has been made before providing necessary care and treatment for injured [employees].

*Harding,* 28 P.2d at 184. *See generally,* 4 Larson, *Workmen's Compensation Law* § 82.61 at 15–1215 to 15–1224 (1989) (voluntary payment does not constitute an "award" for which proceedings may be reopened nor does it waive the employer's right to later dispute the claim).

■ A second reason for rejecting petitioner's claim is that petitioner's 1984 heart attack was never formally considered by the Industrial Commission. Thus, the Commission did not "reopen" the issue of compensability, but rather reviewed petitioner's heart attack for the first time. Accordingly, we review the Commission's determination with respect to the 1984 heart attack under the same standard of review previously set forth in this opinion, and our conclusion remains the same—there is substantial, competent medical testimony supporting the Commission's conclusion that petitioner's 1984 heart attack was not medically related to his employment activities.

Based on the foregoing, the Commission's determination denying petitioner disability benefits is affirmed.

DAVIDSON and BENCH, JJ., concur.