JEFFERSON REALTY OF SOUTH DADE, INC., Plaintiff-Appellant,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellee.

No. 26613.

United States Court of Appeals Fifth Circuit.

May 1, 1969.

Ray H. Pearson, Larry S. Stewart, Frates, Fay, Floyd & Pearson, Miami, Fla., for appellant.

Joseph F. Jennings, Barry G. Seidel, Dixon, Bradford, Williams, McKay & Kimbrell, Miami, Fla., for appellee.

Before PHILLIPS *, BELL and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This case arises out of a suit on a Comprehensive Dishonesty, Disappearance and Destruction insurance policy. At the trial, the District Court denied defendant's motion for a directed verdict made at the close of all the evidence and submitted the case to the jury pursuant to the provisions of Rule 50(b), Federal Rules of Civil Procedure. The jury returned a verdict in favor of the plaintiff, Jefferson Realty of South Dade, Inc. Thereafter, the District Court granted defendant's motion for judg-

* Of the Tenth Circuit, sitting by designation.

ment notwithstanding the verdict because of plaintiff's noncompliance with Endorsement "B" of the policy. The granting of said motion deleted a substantial portion of the jury's verdict.[1] This appeal followed.

Jefferson Realty of South Dade, Inc., plaintiff-appellant, operates numerous large department stores on the lower east coast of Florida. At the time of this occurrence it had three stores. During the night of April 9, 1966, persons unknown to plaintiff burglarized its Kendall store, breaking into a locked safe and taking approximately $40,000.00 in money and securities and causing approximately $650.00 damage to the premises in the process.

A claim was made under Fidelity and Deposit Company's defendant-appellee, policy which provides coverage for these type losses.[2] Losses of money and securities were subject to Endorsement "B" which provided, for the Kendall store, that while the premises were not open for business:

*Endorsement "B"*

Insurance under Insurance Agreement II applicable to loss of Money and Securities shall be limited to cover and apply only to property while contained within the described properly locked safes or chests:

| *Location of Premises* | *Safe or Chest* |
|---|---|
| 7900 S.W. 104th Street | Mosler TRTL-30 |
| Kendall, Florida | Class G safe |

Fidelity and Deposit Company denied coverage for Jefferson Realty's loss due to an alleged violation of the safe or chest warranty (Endorsement "B") as well as an alleged violation of Endorsement "C".[3] Jefferson Realty counters

1. As a result of its answers to special interrogatories, the jury found for the insured in the amount of $40,228.93. A Judgment Notwithstanding the Verdict was granted except as to the property damage of $655.05, which the parties agreed was covered by other policy provisions.

2. *Insurance Agreement II*
   *Loss inside Premises Coverage*
   Loss of Money and Securities by the actual destruction disappearance or wrongful abstraction thereof within the Premises or within any Banking Premises or similar recognized places of safe deposit.

   Loss of other property by Safe Burglary or Robbery within the Premises or attempt thereat, and loss of a locked cash drawer, cash box or cash register by felonious entry into such container within the Premises or attempt thereat or by felonious abstraction of such container from within the Premises, and damage to the Premises by such Safe Burglary, Robbery or felonious abstraction, or by or following burglarious entry into the Premises or attempt thereat, provided with respect to damage to the Premises the Insured is the owner thereof or is liable for such damage.

3. *Endorsement "C"*

   It is agreed that as respects each Premises designated below the protection or service described below as applicable thereto will be maintained by the Insured at all times when the Premises are not regularly open for business.
   *Location of Premises*      *Protection or Service Afforded*
   7900 S.W. 104th Street,   One private watchman shall be on duty within the
   Kendall, Florida      Premises and register at least hourly on a watchman's clock and signal an outside phone answering service at least hourly.

   Phelps Time Locks on all entrances and exits.

with the contention that it relied on defendant's explanation of the safe or chest warranty and that defendant was negligent in that explanation.

Under the facts of the case *sub judice,* it is undisputed that the stolen money and securities were not in a TRTL–30 safe at the time of the burglary. The practice of the store was to place the cash drawers from all of the cash registers into a large walk-in safe each night. The small, separately-locked TRTL–30 safe was in the corner of the larger safe, but was not used in accordance with the endorsement to the policy. An agent of Jefferson Realty, Mr. Maronek, testified that he was not properly orientated as to the terms of Endorsement "B", and that defendant represented to him that coverage would be afforded if the moneys were kept in "a safe or chest". The associate manager of Fidelity and Deposit Company's Miami office, Mr. Parry, claimed to have met Maronek prior to the opening of the Kendall store and to have told him that a TRTL–30 Class G safe would be required. However, Maronek did admit that Endorsement "B" was easy to locate and read.

■ Jefferson Realty prefaces its argument as to the sufficiency of the evidence with the contention that the insurer failed to properly develop a foundation for a judgment notwithstanding the verdict at the time of the trial. It is urged by the insured that since the insurer's grounds for a directed verdict were based on the safe or chest warranty that the directed verdict was improper as a violation of that warranty would not forfeit its right to recover for the damage to the premises. Moreover, it is asserted that the proper procedure would have been a motion to strike that portion of the claim involving money and securities. In accordance with Rule 50 (a) and (b) of the Federal Rules of Civil Procedure,[4] the Court perceives no merit in the claim as outlined. Rule 50 (b) does not provide that a judgment notwithstanding the verdict may be based on a motion to strike. On the contrary, a motion for a directed verdict is the only correct procedure to be employed in developing a foundation for a judgment notwithstanding the verdict.

As to the standard to be employed in reviewing the granting of a judgment notwithstanding the verdict, the Fifth

4. Rule 50(a) and (b), Federal Rules of Civil Procedure:
*Motion for a Directed Verdict and for Judgment Notwithstanding the Verdict*
    (a) *Motion for Directed Verdict: When Made; Effect.* A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
    (b) *Motion for Judgment Notwithstanding the Verdict.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court

is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

Circuit acting en banc formulated the correct rule in Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, thereby expressly overruling Planters Manufacturing Co. v. Protection Mutual Insurance Co., 380 F.2d 869 (5 Cir., 1968).[5] Writing for the Court, Judge Ainsworth in a scholarly opinion traced the development of the standards of reviewing judgments notwithstanding the verdict and then stated the correct test to be:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case —but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury."

Applying the *Boeing* test to the case *sub judice,* we conclude that the trial judge properly granted the judgment notwithstanding the verdict as to the value of the money and securities. As discussed in the District Court's opinion, the two elements of estoppel to be proven are (1) negligence of the insurer in explaining the policy, and (2) justifiable reliance by the insured on this negligent explanation. Central Bank and Trust Company v. General Finance Corporation, 297 F.2d 126 (5 Cir., 1961). Jefferson Realty was unable to establish either of these ingredients. A review of the policy reveals that Endorsement "B" is quite conspicuous and that any perusal of the terms thereof would disclose the safe or chest warranty. Moreover, there was testimony to the effect that the necessity of use of TRTL–30 safe was fully explained to the insured. In addition, the insurer offered testimony, the truth of which was acquiesced in by Jefferson Realty that the insured was informed that the money to be covered by the policy must be stored in a "safe or chest".[6]

In consideration of the second factor of estoppel, i. e., reliance, we are convinced that Jefferson Realty actively participated in the negotiation of this insurance contract in that the insured rejected several endorsements which it felt were objectionable. It appears clear that such involvement forecloses any allegation of reliance on the part of the insured. No facts presented evidenced reliance sufficient to satisfy that required by case law.

We find it unnecessary to address ourselves to the question of extended coverage which is propounded by the insurance company, nor do we feel compelled to discuss Endorsement "C" of the insurance contract. The decision of the District Court is affirmed.

---

5. In *Planters*, this Court adopted the rule that: "It is only when there is a *complete absence* of probative facts to support the conclusion reached that the jury's judgment may be ignored". 380 F.2d at 874.

6. This is supported by the testimony of Mr. Milton Maronek, agent for Jefferson Realty.