425 So.2d 1181 (1983)
PENINSULAR LIFE INSURANCE COMPANY, Appellant,
v.
Johnnie J. WADE, Sr., Appellee.
No. 82-209.
District Court of Appeal of Florida, Second District.
January 19, 1983.
*1182 Leonard H. Johnson of Dayton, Sumner, Luckie & McKnight, Dade City, and Peter Foley of Ragsdale & Liggett, Raleigh, N.C., for appellant.
Thomas P. McAlvanah of Gibbs & McAlvanah, Dade City, for appellee.
BOARDMAN, Acting Chief Judge.
Defendant Peninsular Life Insurance Company appeals a final judgment against it awarding plaintiff/appellee Johnnie J. Wade, Sr. $5000. We affirm.
The facts, taken in the light most favorable to appellee, are as follows:
Appellee and his now deceased wife both applied for life insurance policies with appellant and were both rejected for failure to meet the health standard. Earl Booth, the insurance agent employed by appellant whom the Wades consulted, then advised them to apply for the policy in issue here, explaining that it was a high risk policy but would pay full benefits. The Wades had requested full coverage policies and expected to receive precisely that. The Wades did apply for and were issued such policies, Mrs. Wade's policy having a face value of $5000.
Upon receiving the policy, appellee read the benefits portion thereof, which provided:
IN CONSIDERATION of the payment of the Mode Premium stated in the schedule above, on or before the Date of Policy and continued payment of such premiums during the continuance of this Policy until death of the Insured, the Company will pay the Beneficiary, upon receipt at the Home Office of the Company of due proof of death of the Insured, the Death Benefit applicable to the policy year in which death occurs.
The Death Benefit for the first three policy years is given in the table below for each $100 of Annual Premium.

 Death Benefit
 Policy Year Per $100 Annual Premium
 1 $108.00
 2 224.64
 3 350.61

After the first three policy years, the Death Benefit of the Policy is the Ultimate Face Amount as shown in the schedule above.
Appellee then questioned Booth about the three-year limitation provision in the presence of his sister-in-law (who corroborated his testimony concerning the discussion) and his wife. Booth told appellee that very few people understood this type of policy but that he, Booth, was one of them and that the policies would pay full benefits from the date of issuance.
In reliance on Booth's representations, appellee continued to make premium payments on the policies. His wife died less than six months after issuance of the policy on her life. When notified of Mrs. Wade's death, Booth assured appellee and his sister-in-law that the policy would pay $5000. *1183 However, appellant subsequently refused to pay the $5000 face amount, relying on the three-year limitation provision of the policy, and this litigation ensued.
The general rule is that when the meaning of the policy is clear, it will be enforced even though the insurer's agent had made representations as to coverage which were not included in the policy. Hydraulic Equipment Systems & Fabrication, Inc. v. Pennsylvania Millers Mutual Insurance Co., 277 So.2d 53 at 57 (Fla. 3d DCA 1973); State Liquor Stores # 1 v. United States Fire Insurance Co., 243 So.2d 228 (Fla. 1st DCA 1971).
The general rule [in Florida] is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is not applicable to matters of coverage as distinguished from grounds for forfeiture. In other words, while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel.
(Citations omitted.) Six L's Packing Co., Inc. v. Florida Farm Bureau Mutual Ins. Co., 268 So.2d 560, 563 (Fla. 4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla. 1973).
However, Hydraulic and State Liquor Stores involved representations made only before, not after, the policies in question were issued, and Six L's involved the insured's duty to make monthly reports on the value of the property insured and is in no way analogous to the instant case.
Our research, which included a review of the law in other jurisdictions, revealed no case directly on point, i.e., involving an insurance agent's incorrect representations made as to the meaning of policy language after the insured had read the portion of the policy in question. However, we have found cases in which the insurer was held estopped to deny coverage where the insured was assured of coverage and sustained a loss before learning that the policy actually issued did not provide coverage for the loss in question. E.g., Burns v. Consolidated American Insurance Co., 359 So.2d 1203 (Fla. 3d DCA 1978); Emmco Insurance Co. v. Marshall Flying Service, Inc., 325 So.2d 453 (Fla. 2d DCA 1976); Monogram Products, Inc. v. Berkowitz, 392 So.2d 1353 (Fla. 2d DCA 1980); Liberty Mutual Fire Insurance Co. v. Sanderman, 286 So.2d 254 (Fla. 3d DCA 1973); Harr v. Allstate Insurance Co., 54 N.J. 287, 255 A.2d 208 (1969); Dodge v. Aetna Casualty & Surety Co., 127 Vt. 409, 250 A.2d 742 (1969); Hully v. Aluminum Co. of America, 143 F. Supp. 508 (S.D.Iowa 1956). See generally J. Appleman, Insurance Law & Practice § 9090 (1981).
We think Emmco is instructive. Emmco sought a reversal of a declaratory judgment decreeing coverage under an insurance policy it had issued to Marshall, a crop dusting company which had been sued by a third party for chemical damage caused by Marshall's spraying. Marshall had applied for insurance through an agent of Emmco and had specifically requested in its application that Emmco provide chemical damage insurance. The policy issued specifically excluded chemical damage. This court affirmed the trial court's ruling that "as a matter of law, Emmco was responsible for chemical damage coverage if its agent failed to provide such coverage or failed to notify the Flying Service that the policy which in fact issued excluded such coverage." 325 So.2d at 454. Accord Liberty Mutual Fire Insurance Co. v. Sanderman.
Here, while it is true that appellee's application did not contain a written request for full benefits as far as we know, appellee was affirmatively misled by appellant's agent and employee, Booth, after having read the policy coverage provision and called it to Booth's attention. We consider Booth's behavior far more egregious than that of the Emmco agent who merely failed to notify the insured that the policy excluded the requested chemical damage coverage. We agree with the reasoning in Harr that
where an insurer or its agent misrepresents, even though innocently, the coverage *1184 of the insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract, and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss or a risk or from a peril actually not covered by the terms of the policy. The proposition is one of elementary and simple justice. By justifiably relying on the insurer's superior knowledge, the insured has been prevented from procuring the desired coverage elsewhere... . If the insurer is saddled with coverage it may not have intended or desired, it is of its own making, because of its responsibility for the acts and representations of its employees and agents. It alone has the capacity to guard against such a result by the proper selection, training and supervision of its representatives.
255 A.2d at 219. See also Jefferson Realty v. Fidelity & Deposit Co., 410 F.2d 847 (5th Cir.1969).
As stated in Burns: "While estoppel cannot be invoked to create coverage clearly excluded by a written contract of insurance, the concept may be utilized against an insurer when its conduct has been such as to induce action in reliance on it." 359 So.2d at 1207. We conclude that appellant is estopped to deny full coverage on Mrs. Wade's life, notwithstanding the clear and unambiguous policy provision, after its agent and employee unqualifiedly held himself out as an expert on policies such as appellee's and misinformed appellee as to the meaning of that provision, which actions would be expected to and did induce appellee's reliance on the agent's false representations.
Accordingly, the final judgment is AFFIRMED.
CAMPBELL, J., concurs.
GRIMES, J., dissents with opinion.
GRIMES, Judge, dissenting.
In addition to those cited in the majority opinion, the following Florida decisions also support the general rule that waiver and estoppel are not applicable to matters of insurance coverage as distinguished from grounds for forfeiture. Radoff v. North American Co. for Life & Health Insurance, 358 So.2d 1138 (Fla. 3d DCA 1978); Unijax, Inc. v. Factory Insurance Association, 328 So.2d 448 (Fla. 1st DCA 1976); Johnson v. Dawson, 257 So.2d 282 (Fla. 3d DCA 1972); see also Reisman v. New Hampshire Fire Insurance Co., 312 F.2d 17 (5th Cir.1963) (applying Florida law); Kaminer v. Franklin Life Insurance Co., 472 F.2d 1073 (5th Cir.1973) (applying Florida law). Of greater significance is the fact that when the supreme court discharged certiorari in Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co., it did not do so upon jurisdictional grounds but rather stated, "we hold that the District Court of Appeal has correctly decided the cause and its decision is adopted as the ruling of this Court." 276 So.2d at 38. The opinion of the district court of appeal to which the supreme court referred contained the language quoted by the majority in the instant case for the proposition that waiver and estoppel cannot enlarge insurance coverage.
There is an annotation at 1 A.L.R.3d 1139 (1965) entitled "Doctrine of estoppel or waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly included therefrom." The annotation and its supplement cite cases from forty-one states supporting the rule that waiver and estoppel cannot bring within the coverage of an insurance policy risks which are not covered by its terms. Cases from eight states are cited for the contrary view. (There is an overlap among the states because some of them have decisions going both ways.)
In three of the four Florida cases cited by the majority in support of its holding, the opinions do not reflect that the general rule concerning waiver and estoppel as it relates to coverage was even argued. Only in Burns v. Consolidated American Insurance Co. (Judge Hubbart dissenting) does the court mention the general rule. However, the court purports to distinguish the rule by concluding that the conversations between *1185 the insured and the agent may have created a parol contract contrary to the provisions of the written insurance policy. In the present case, the majority does not suggest that it based its position on a parol contract with an agent who was not shown to have the authority to amend the terms of the policy.
I can see no basis for making a distinction between conversations with the agent which took place after issuance of the policy and those which occurred beforehand. The agent's statements would still constitute waiver and estoppel if these doctrines could be raised. Even though the language of the policy is clear, given the facts of this case I can understand why the majority wishes to affirm the award of the full coverage. Unfortunately, I believe the case represents a good example of the timeworn adage that "hard cases make bad law."
I respectfully dissent.