**Ward PERKINS, Personal Representative of the Estate of Norma Perkins, Plaintiff and Appellee,**

v.

**GREAT-WEST LIFE ASSURANCE COMPANY and Lincoln National Life Insurance Company, Defendants and Appellants,**

**GREAT-WEST LIFE ASSURANCE COMPANY, Third–Party Plaintiff and Appellant,**

v.

**SOUTHWEST HEALTH MANAGEMENT COMPANY, INC., a California corporation, and Lincoln National Life Insurance Company, an Indiana corporation, Third–Party Defendants and Appellees.**

Nos. 890732–CA, 890733–CA.

Court of Appeals of Utah.

June 21, 1991.

Clark W. Sessions (argued), Cynthia K. Cassell, Campbell, Maack & Sessions, Salt Lake City, for defendant and appellant Great–West Life Assur. Co.

James M. Park (argued), Michael W. Park, Park, Braithwaite & Eves, Cedar City, for plaintiff and appellee Ward Perkins.

Jathan W. Janove (argued), Robert K. Heineman, Van Wagoner & Stevens, Salt Lake City, for defendant and appellant Lincoln Nat.

Before BENCH, GARFF and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Great–West Life Assurance Company (Great–West), appeals from an order denying its motion for summary judgment and granting summary judgment in favor of Mr. Perkins. Great–West also appeals the dismissal of its cross-claim against Lincoln National Life Insurance Company (Lincoln National).

## FACTS

The material facts in the case between Mr. Perkins and Great–West are undisputed. Mr. Perkins' wife was employed as a nurse for Southwest Health Management, Inc. (Southwest) for approximately sixteen and a half years, beginning on January 1, 1970. On June 4, 1986, she became dis-

abled and was unable to work for an indefinite period of time. While away from work, she was paid sick leave and accrued vacation time. Throughout her absence, Southwest considered her a full-time employee, and she was kept on their records as such until her death in April 1987.

Prior to July 1, 1986, Southwest provided group medical and life insurance to its employees through Lincoln National. Effective July 1, 1986, Great–West underwrote the group health and life insurance policy for Southwest.[1] Great–West published a booklet, entitled *EDGE Booklet,* which contained a description of eligibility requirements, benefits, and exclusions under the policy. According to the uncontroverted affidavit of John Kingsbury, an associate manager of life benefits at Great–West, copies of the booklet were given to Southwest to distribute to its employees.[2]

Mrs. Perkins submitted a standard application card to Great–West and applied for group health and life insurance coverage. The card was dated June 30, 1986. The application provided a space for the employer to enter the date of full-time employment, which was recorded as January 1, 1970. During the next nine months, Mr. and Mrs. Perkins submitted seven health insurance benefit claim forms to Great–West. The claims were paid in the total amount of $8,703.40.

Shortly after Mrs. Perkins' death in April 1987, Southwest submitted a life claim re-

---

1. The parties dispute who actually paid the premiums. Mr. Perkins alleges that his wife paid the premiums to Great–West, however, there is no evidence in the record to support this allegation. To the contrary, the uncontroverted evidence shows that Great–West's policy was noncontributory, meaning that the employer paid the entire premium. An affidavit submitted by Great–West also indicates that the premiums paid by Southwest on Mrs. Perkins' behalf were returned to Southwest. This is not a material dispute because the relevant provisions in the written policy remain the same no matter who pays the premiums.

2. Great–West thereby fulfilled its duty as to delivery of the booklets to Southwest's employees. When a policy of group insurance has been issued and the insurer has provided the employ-

er with certificates of insurance and copies of the insurance policy for distribution to employees, the insurer does not have a duty to personally see that each employee actually receives his or her copy. Utah Code Ann. § 31A–21–311(1)(c) (1991) states:

> The certificate shall be provided in a manner reasonably calculated to bring it to the attention of the certificate holder. The insurer ... may deliver or mail them in bulk to the policyholder to transmit to the certificate holders. An affidavit by the insurer that it has mailed the certificate in the usual course of business creates a rebuttable presumption that it has done so.

Since neither Mr. Perkins nor Lincoln National has offered any evidence to oppose Great–West's affidavit, we must assume that the booklets were delivered as required.

port to Great–West on behalf of Mr. Perkins, who was the beneficiary of the policy. On the life claim report, Southwest reported that Mrs. Perkins' last day actively at work was June 3, 1986. Great–West subsequently denied Mr. Perkins' claim on the basis that his wife was never eligible for its insurance coverage.

## PROCEDURAL BACKGROUND

Mr. Perkins brought suit against Great–West and Lincoln National to recover the insurance proceeds on his wife's life insurance policy. Great–West filed a counterclaim and a cross-claim for the medical benefits paid to Mrs. Perkins. Mr. Perkins and Great–West each filed a motion for summary judgment. Great–West also filed a motion for summary judgment on its cross-claim against Lincoln National.

The trial court granted Mr. Perkins' motion for summary judgment against Great–West, and he was awarded the face amount of the insurance policy plus interest from the date of Mrs. Perkins' death. The trial court also: (1) denied Great–West's motion for summary judgment against Mr. Perkins; (2) dismissed Great–West's cross-claim against Lincoln National as moot, since Mrs. Perkins was insured by Great–West; and (3) determined that Great–West's failure to pay Mr. Perkins' life insurance claim was an act of bad faith.

## ISSUES

Great–West claims that the trial court erred in: (1) granting Mr. Perkins' motion for summary judgment; (2) denying Great–West's motion for summary judgment on its counterclaim; (3) dismissing Great–West's cross-claim and motion for summary judgment against Lincoln National; and (4) finding that Great–West's denial of life insurance benefits to Mr. Perkins was in bad faith.[3]

**3.** All parties conceded at oral argument that the trial court erred in finding that Great–West's actions were in bad faith. Since we reverse the trial court's ruling herein, it is readily apparent

## SUMMARY JUDGMENT

"Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). "Because summary judgment by definition does not resolve factual issues, a challenge to summary judgment presents for review only questions of law. We review those conclusions for correctness, according no particular deference to the trial court." *Id.* The appellate court considers the evidence in the light most favorable to the losing party and affirms " 'only where it appears that there is no genuine issue as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law.' " *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989) (quoting *Themy v. Seagull Enter., Inc.*, 595 P.2d 526, 528–29 (Utah 1979)).

## COVERAGE UNDER THE INSURANCE POLICY

Great–West contends that the trial court erred in granting summary judgment to Mr. Perkins because the insurance policy was clear and unambiguous in limiting coverage to active, full-time employees, and that since Mrs. Perkins was not an active, full-time employee at any time from the effective date of the policy, July 1, 1986, to the date of her death, she was not covered.

■ "[I]n interpreting a contract, we first look to the four corners of the agreement to determine the intent of the parties." *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989). " 'If a policy of insurance is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, as an average or reasonable person with ordinary understanding would construe them.' " *Draughon v. CUNA Mutual Ins. Soc'y*, 771 P.2d

that Great–West's denial of benefits was not in bad faith. Therefore, we also reverse the trial court's ruling that Great–West's actions were in bad faith.

1105, 1108 (Utah App.1989) (quoting *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 464 P.2d 253, 257 (1970)). "[I]f an insurance policy is ambiguous or uncertain, so that it is fairly susceptible to different interpretations, any doubt should be resolved in favor of insurance coverage." *American Casualty Co. v. Eagle Star Ins. Co., Ltd.*, 568 P.2d 731, 734 (Utah 1977) (citations omitted); *see also Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748 (Colo.1990). We must, therefore, determine if the trial court was correct in ruling as a matter of law that Mrs. Perkins was insured by Great–West.

The group policy provisions pertaining to coverage and benefits are set forth in Great–West's *EDGE Booklet.* This booklet serves as the Certificate of Insurance for those individual employees who are enrolled in the group policy, but only if: (1) the employee is eligible to be insured; (2) becomes insured; (3) stays insured; and (4) a coverage validation insert bearing the employee's name is included in the pocket at the front of the booklet.[4]

The *EDGE Booklet* states that employees are eligible for coverage if they: (1) are residents of the United States or Canada; (2) are permanent, full-time and full pay employees; and (3) work the minimum number of hours per week.[5] An employee must work a minimum of 32 hours per week to qualify as a permanent, full-time and full pay employee, and the work must be performed at a location other than the employee's home.[6] Under the policy, an "employee" is defined as "a person in the service of an employer."[7] "Service" for an active employee is defined as "employment, on an active, permanent, full-time and full pay basis, for the minimum number of hours at a place other than the employee's residence."[8]

The *EDGE Booklet* further states that the effective date of the group policy is July 1, 1986, and that an active employee's coverage will begin on the effective date if the employee has completed more than 90 days continuous service. However, if an employee is not at work on the effective date, coverage begins on the date the employee returns to work.[9]

Shortly after Mrs. Perkins' death, Southwest submitted a Life Claim Report to Great–West which stated that her last day of active employment was June 3, 1986. Great–West immediately denied the claim stating that Mrs. Perkins was not eligible for coverage according to the terms of the group insurance policy contained in the *EDGE Booklet.*

■ The uncontroverted evidence indicates that, according to the terms of Great–West's policy, Mrs. Perkins terminated active employment before the policy became effective and she never returned to work at any time thereafter. The contractual provisions in Great–West's policy clearly and unambiguously limit coverage to active employees, who are at work on or after the effective date of the policy. The fact that she was considered a full-time employee by Southwest does not bring her within the definition of employee contained in the insurance policy. Since Mrs. Perkins was not an active employee on the effective date of the Great–West policy, or any time thereafter, she was not insured under that policy.

### EQUITABLE ESTOPPEL

Alternatively, Mr. Perkins claims that since Great–West accepted and retained premiums paid on his wife's behalf, and continued paying health benefits, it should be estopped from denying his claim for life insurance proceeds.

■ Equitable estoppel is defined as "conduct by one party which leads another party in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate

---

4. *EDGE Booklet* at 1.

5. *Id.* at 17.

6. *Id.* at 1.

7. *Id.* at 12.

8. *Id.*

9. *Id.* at 1.

his conduct." *United Am. Life Ins. Co. v. Zion's First Nat'l Bank*, 641 P.2d 158, 161 (Utah 1982) (citations omitted). We must therefore decide whether Great–West's conduct was such that it should be estopped from denying Mr. Perkins' claim for life insurance proceeds.

Great–West argues that estoppel does not apply because: (1) when it paid the health benefits, it was relying on the misrepresentation that Mrs. Perkins was an eligible employee; (2) Mrs. Perkins' reliance on Great–West's conduct was not reasonable in light of the express provisions contained in the *EDGE Booklet;* and (3) estoppel cannot be used to extend coverage to risks not covered by the express terms of the policy. As to all three arguments, we agree.

### Great–West's Reliance on Representations that Mrs. Perkins was an Eligible Employee

▪ A misrepresentation by an insurance applicant of a material fact which is relied on by the insurer permits the insurer to void the policy. *Major Oil Corp. v. Equitable Life Assurance Soc'y*, 457 F.2d 596, 602 (10th Cir.1972) (applying Utah law). However, "[a]n insurance company cannot escape liability on a policy if it is established that there should have been no actual reliance on the applicant's misrepresentation, concealment, or omission." *Hardy v. Prudential Ins. Co.*, 763 P.2d 761, 770 (Utah 1988) (citing *Major Oil Corp.*, 457 F.2d at 602).

▪ Effective July 1, 1986, Southwest entered into an insurance contract with Great–West to provide group health and life insurance for Southwest's employees. In order to be insured, each individual employee was required to submit an application. Mrs. Perkins' application stated that her date of full-time employment was January 1, 1970, and that she was a full-time employee. Relying on this information, Great–West paid seven health benefit claims submitted by the Perkins. According to the terms of the Great–West's policy, however, Mrs. Perkins would not have been classified as an "employee," and

should not have been enrolled, inasmuch as she was not a full-time, full pay employee working a minimum of 32 hours per week. Great–West discovered that Mrs. Perkins was not eligible to be insured when Southwest submitted a Life Claim Form, which stated that Mrs. Perkins' last day of active employment was June 3, 1986. After learning of Mrs. Perkins' employment status, Great–West immediately denied the life insurance claims and refunded all premiums previously paid on Mrs. Perkins' behalf.

"It would be unjust to both the employee and the insurance carrier if the law were that when the insurance carrier once undertakes to provide medical or other care for an injured workman it has lost all right to afterwards defend against what it believes to be an unjust or illegal claim." *Larson v. Wycoff Co.*, 624 P.2d 1151, 1155 (Utah 1981) (quoting *Harding v. Industrial Comm'n of Utah*, 83 Utah 376, 381, 28 P.2d 182, 184 (1934)). Great–West has a right to deny claims it deems to be illegal or unjust, even after paying them. There is nothing to indicate that Great–West was unreasonable in relying on the representations regarding Mrs. Perkins' employment status, and it should not be estopped from denying Mr. Perkins' life insurance claim simply because it paid previous health benefit claims in reliance on false information.

### Lack of Reasonable Reliance

▪ "A party claiming an estoppel cannot rely on representations or acts if they are contrary to his knowledge of the truth or if he had the means by which with reasonable diligence he could ascertain the truth." *Larson v. Wycoff Co.*, 624 P.2d 1151, 1155 (Utah 1981) (citing *Coombs v. Ouzounian*, 24 Utah 2d 39, 465 P.2d 356 (1970)). Mrs. Perkins had the means by which she could have ascertained the contents of Great–West's policy. Southwest had received booklets which clearly delineated the terms of the policy. The booklets were given to Southwest for distribution to its employees. With reasonable diligence, Mrs. Perkins could have easily learned that she was not eligible for coverage under

Great–West's insurance policy. Given Mrs. Perkins' failure to learn the terms of her insurance policy, her reliance thereon was not reasonable.

### Extension of Coverage

 The great majority of states dealing with the doctrine of estoppel have held that it cannot be used to bring risks which were not covered by the terms of the policy within coverage of the policy. *See, e.g., Farmers Ins. Co. v. Zumstein,* 138 Ariz. 469, 675 P.2d 729 (Ariz.App.1983); *Topeka Tent and Awning Co. v. Glen Falls Ins. Co.,* 13 Kan.App.2d 553, 774 P.2d 984 (1989); *Boyer Metal Fab, Inc. v. Maryland Casualty Co.,* 90 Or.App. 103, 750 P.2d 1195, *review denied,* 305 Or. 672, 757 P.2d 422 (1988); *St. Paul Fire and Marine Ins. Co. v. Albany County Dist. No. 1,* 763 P.2d 1255 (Wyo.1988). Under group insurance plans, insurance companies rely heavily on the assumption that active employees are insurable risks, and for this reason limiting provisions are included in their policies. *See* 1 Appleman, *Insurance Law and Practice* § 44 (1981). The terms of Great–West's policy expressly limited coverage to active employees, and "[i]t does not seem unreasonable that there be some rules as to eligibility so that coverage would be only upon the regular employees of the work force...." *Marriot v. Pacific Nat'l Life Assurance Co.,* 24 Utah 2d 182, 467 P.2d 981, 983 (1970). Great–West's policy clearly did not extend coverage to disabled employees. Great–West contracted with Southwest to extend insurance coverage to *active* employees only, and it took steps to ensure that Southwest and its employees were aware of the terms of the policy by publishing and distributing a booklet which described the rules and benefits of the policy. Allowing estoppel in this case would unjustifiably extend coverage to risks which Great–West did not contract to cover.

### Express Eligibility Limitation Language

 Additionally, if we estop Great–West from denying coverage, we would encourage companies to enroll all employees without regard to their eligibility or to the express terms included in insurance policies. The actual terms of the policies which limit coverage to active employees would be meaningless. Here, Southwest could unilaterally determine which employees were active or full-time, merely by keeping them on the payroll. Endorsing such an approach would be patently unfair, and we decline to do so.

For the above reasons Great–West cannot be estopped from denying coverage simply because they mistakenly paid claims submitted by an ineligible employee.

### CONCLUSION

The trial court's order granting Mr. Perkins' motion for summary judgment and denying Great–West's motion for summary judgment was in error, and the same is reversed and remanded with instructions to enter summary judgment for Great–West. The trial court's finding that Great–West acted in bad faith is likewise reversed. Furthermore, the dismissal of Great–West's cross-claim against Lincoln National and its corresponding motion for summary judgment was also in error and is reversed and remanded for further proceedings. Additionally, Mr. Perkins' action against Lincoln National, which was not addressed in the trial court's order, must also be considered on remand.

BENCH and GARFF, JJ., concur.