2005 UT App 154

**Robert L. YOUNGBLOOD II,
Plaintiff and Appellant,**

v.

**AUTO–OWNERS INSURANCE COMPANY, a corporation,
Defendant and Appellee.**

**No. 20040184–CA.**

Court of Appeals of Utah.

March 31, 2005.

Peter C. Collins, Peter C. Collins LLC, Salt Lake City, for Appellant.

Robert R. Wallace, Kirton & McConkie, Salt Lake City, for Appellee.

Before BILLINGS, P.J., JACKSON and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Robert L. Youngblood II appeals the trial court's order granting summary judgment to Auto–Owners Insurance Company (Auto–Owners) on Youngblood's claims of equitable estoppel and bad faith. We reverse and remand.

## BACKGROUND

¶ 2 Youngblood, the president and sole owner of Youngblood Home Improvement, Inc., purchased an auto insurance policy (the Policy) from Auto–Owners for his business. The Policy contained coverage for certain specifically designated motor vehicles, and underinsured motorist (UIM) coverage if those vehicles were involved in an accident with an underinsured motorist. The Policy provided UIM coverage of $300,000 per person.

¶ 3 Youngblood never read the Policy, which provided that Auto–Owners "will pay compensatory damages [that the named insured is] legally entitled to recover ... from the owner or operator of any underinsured automobile ... for bodily injury [the named insured] sustain[s] ... when [the named insured is] a pedestrian."

¶ 4 When Youngblood purchased the Policy, he spoke with an Auto–Owners insurance agent. According to Youngblood's deposition testimony, the agent made representations which Youngblood relied upon in purchasing

the Policy. Specifically, Youngblood testified that the agent

> gave me a scenario ... probably just a scare tactic. He said ... 'the reason you have [UIM and uninsured motorist coverage] is you have to protect your family.' And he said 'if you're walking down the street, you've got nothing if you ... don't have underinsured and uninsured motorist and somebody runs you over. You could be sitting at your desk or walking down the street and if you don't have the coverage, you've got nothing.'

¶ 5 Youngblood testified that the agent went on to tell him that " 'the only thing I would recommend, other than [the UIM coverage] is to get some kind of wage protection ... at the very least you should buy underinsured motorist and uninsured motorist because there are a lot of people out there ... that d[on't] carry insurance at all.' " Youngblood testified that he relied on these statements because the agents were "selling a lot of insurance and knew what they were doing." Finally, at the time of purchasing the Policy, Youngblood testified that no Auto–Owners agent told him that because the Policy was a corporate policy it would not cover Youngblood personally should he become the victim of a pedestrian accident.

¶ 6 After purchasing the Policy, on December 30, 1997, Youngblood was walking across a parking lot toward a medical office when he was struck by an automobile driven by Rachel Cooksey. Cooksey had $50,000 available in liability insurance. Youngblood settled with Cooksey for her policy limits, however, he alleges that hospital bills for his injuries sustained as a result of the accident exceed $50,000.

¶ 7 Prior to settling with Cooksey, Youngblood asked Auto–Owners to waive its subrogation rights to ensure that settlement would not jeopardize his entitlement to UIM benefits under the Policy. Auto–Owners agreed to do so and Youngblood executed a release and settlement agreement to Cooksey in exchange for the $50,000 liability insurance. Youngblood sent Auto–Owners a copy of the release along with documents evidencing Youngblood's damages and a UIM settlement demand.

¶ 8 On January 5, 2002, Auto–Owners sent Youngblood a letter which first recognized that Youngblood was the insured under the Policy and then stated "we have determined this claim will be honored." However, on March 11, 2002, Auto–Owners sent Youngblood a letter stating that "further review of the coverage" had caused Auto–Owners to take the position that because Youngblood was not occupying the insured vehicle, "there is no coverage afforded to him for this loss and we will defend based on this issue."

¶ 9 Youngblood brought suit against Auto–Owners alleging that he was entitled to UIM benefits and that Auto–Owners breached its duty of good faith and fair dealing. After limited discovery, Auto–Owners filed a motion for summary judgment which the trial court granted. Youngblood appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 10 Youngblood argues that the trial court erred in granting Auto–Owners's motion for summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). When reviewing a grant of summary judgment, we view all facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and review the trial court's conclusions of law for correctness. *See Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 13, 63 P.3d 705.

## ANALYSIS

¶ 11 Youngblood argues that the trial court erred in granting Auto–Owners's motion for summary judgment relying on *Perkins v. Great–West Life Assurance Co.*, 814 P.2d 1125 (Utah Ct.App.1991), and that Auto–Owners should be equitably estopped from denying coverage where Youngblood reasonably relied on Auto–Owners's misrepresentations made prior to his purchase of the Policy. We agree with Youngblood that the granting of summary judgment was error.

## I. Equitable Estoppel

¶ 12 Utah courts define equitable estoppel as "conduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct." *United Am. Life Ins. Co. v. Zions First Nat'l Bank*, 641 P.2d 158, 161 (Utah 1982).

¶ 13 In *Perkins*, the case the trial court relied upon in granting summary judgment, this court determined that an insurance company was not estopped from denying a claim for life insurance where the policy clearly stated that coverage extended only to "active, full-time employees." 814 P.2d at 1128. Perkins worked as a nurse for sixteen and one-half years until she became disabled and was unable to work. *See id.* at 1127. Great–West Insurance Company (Great–West) mistakenly paid medical benefits and accepted and retained premiums on behalf of Perkins in reliance on representations made by her in an application for health and life insurance that she worked full time. *See id.* Upon Perkins's death and her husband's claim for life insurance, Great–West denied the claim on the basis that Perkins was never eligible for insurance coverage because she did not work full time. *See id.* at 1128. We determined that estoppel could not be used to extend coverage to risks not covered by the express terms of the policy. *See id.* at 1130–31. Moreover, "given Mrs. Perkins'[s] failure to learn the terms of her insurance policy, her reliance thereon was not reasonable." *Id.* at 1131.

¶ 14 Simply put, *Perkins* does not present a similar factual scenario as the instant case. Youngblood's deposition testimony alleges that an Auto–Owners agent misrepresented the scope of the Policy *before* it was purchased. In *Perkins*, there were no representations made by Great–West as to coverage, rather Great–West mistakenly paid benefits and accepted premiums based on Perkins's inaccurate application indicating she was a full-time employee. *See id.* at 1127. Therefore, the trial court erred in granting summary judgment based on *Perkins*.[1]

¶ 15 This is a case of first impression in Utah. Utah courts have never dealt with the doctrine of estoppel in an insurance coverage case where an insurance agent allegedly made material misrepresentations as to coverage before a policy was purchased. However, Utah courts have held that for a claim of misrepresentation to modify a contract, it is not essential that the party making the representations knew that they were false, if they were in fact false and material, and the other party had a right to rely thereon, and did so. *See, e.g., Smith v. Columbus Buggy Co.*, 40 Utah 580, 123 P. 580, 585 (1912). Thus, to escape the language of a contract, there must be a false and material statement made before the contract is consummated and the plaintiff must have reasonably relied upon such statement.

¶ 16 Turning to other jurisdictions, there is a split of authority as to whether in some circumstances equitable estoppel may be utilized to modify the terms of an insurance policy. Some jurisdictions hold that the doctrine of estoppel may not be used to expand an insurance policy's coverage to include risks that the policy specifically excludes. *See, e.g., Nicholls v. Zurich Am. Ins. Group*, 244 F.Supp.2d 1144, 1157 (D.Colo.2003) (stating under Colorado law, "the doctrine of estoppel cannot, based upon conduct of insurer, bring within coverage of [the] insurance policy risks not covered by its terms or risks expressly excluded from the policy"); *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 696, 702 (.2002) (holding that the doctrine of waiver or estoppel cannot be given the effect of enlarging or extending the coverage as defined in the contract); *Quillian v. Equitable Life Assurance Soc'y*, 61 Ga.App. 138, 6 S.E.2d 108, 112 (1939) (holding that neither waiver nor estoppel was available to radically change the terms of an

---

**1.** In *Perkins v. Great–West Life Assurance Co.*, 814 P.2d 1125 (Utah Ct.App.1991), we noted that a "great majority of states dealing with the doctrine of estoppel have held that it cannot be used to bring risks which were not covered by the terms of the policy within coverage of the poli- cy." *Id.* at 1131 (citing numerous cases standing for this proposition). However, the cases cited are all factually distinct from the instant case in that none deal with misrepresentations *before* the insurance policy was purchased.

insurance policy to cover additional subject matter, causes of loss, or matters expressly excluded from the coverage of the policy).

¶ 17 Other jurisdictions, however, hold that an insurer may be estopped from asserting particular policy provisions, even though the effect may be to bring within the coverage of the policy risks not covered by its terms, when an insurance agent misrepresents the coverage of the insurance contract and where the insured reasonably relies on the misrepresentation when purchasing the insurance. We are persuaded by this view.

¶ 18 We are particularly persuaded by the reasoning of *Harr v. Allstate Insurance Co.*, 54 N.J. 287, 255 A.2d 208 (1969), where the New Jersey Supreme Court overturned prior state precedent in holding that equitable estoppel was available to broaden insurance coverage and that estoppel may bar the insurance company's defense of noncoverage where the insurance company agent made misrepresentations before the contract was executed and the purchaser reasonably relied on those misrepresentations in purchasing the policy. *See id.* at 219. In *Harr*, there was evidence that the insured had relied to his detriment on the agent's misrepresentations regarding the scope of fire insurance coverage, as the agent told the insured that he was "fully covered" when in fact the terms of the policy specified certain exclusions. *Id.* at 220. The insured did not receive a copy of the policy, but stated that he took the agent's word that he was "fully covered" because he "felt like [he] had confidence in him." *Id.* at 212. The New Jersey Supreme Court analyzed the view that estoppel is not available to broaden coverage and noted that many cases comprising this view "are confusing and not clear cut" because "[e]stoppel and waiver are often interchangeably and improperly used, and in many cases where estoppel is held unavailable[,] the necessary elements have not been made out anyway, or the insured by reason of his own conduct is clearly not entitled to relief." *Id.* at 218. The court noted that it is more impressed by decisions proceeding

> on the thesis that where an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract, and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss on a risk or from a peril actually not covered by the terms of the policy.

*Id.* at 219. Finally, the court noted that "the [above stated] proposition is one of elementary and simple justice" and "[b]y justifiably relying on the insurer's superior knowledge, the insured has been prevented from procuring the desired coverage elsewhere." *Id.* "To reject this approach because a new contract is thereby made for the parties would be an unfortunate triumph of form over substance." *Id.*

¶ 19 The Florida case of *Peninsular Life Insurance Co. v. Wade*, 425 So.2d 1181 (Fla. Dist.Ct.App.1983), also exemplifies the position that estoppel may be used to broaden insurance contract coverage where the insurer makes misrepresentations before the policy is purchased. *See id.* at 1183–84. In *Peninsular*, the Florida district court determined that the insurer was estopped to deny full coverage on a life insurance policy, notwithstanding a clear and unambiguous policy provision limiting coverage, where the insurer's agent held himself out as an expert and misrepresented to the insured and his wife that the policy would provide "full coverage" at the time of purchasing the policy and where the insured reasonably relied. *Id.* When the insured read the policy a few days later and questioned the agent about a particular provision, the agent told the insured that he was one of the few people who understood the policy and that the policy would pay full benefits from the date of issuance. *See id.* at 1182. Although the facts differ slightly from those in the case before us because there were misrepresentations both before and after the purchasing of the policy, the Florida court stated that it agreed with the reasoning of the New Jersey Supreme Court in *Harr* and held that estoppel may be used to expand the terms of a policy when the agent misrepresents the coverage of the insurance contract before or at its inception and where the insured reasonably relies. *See id.* at 1183–84; *see Harr*, 255 A.2d at

219; *see also Kramer v. United Servs. Auto. Assoc.*, 436 So.2d 935, 937 (Fla.Dist.Ct.App. 1983) (quoting *Peninsular* and stating that the doctrine that waiver and estoppel are not available to extend coverage of insurance policy is not applied without exception; when a insurance agent misrepresents coverage before or at the inception of the contract and the insured reasonably relies, the insurer is estopped to deny coverage). The court in *Peninsular* went on to state that "[w]hile estoppel cannot be invoked to create coverage clearly excluded by a written contract of insurance, the concept may be utilized against an insurer when its conduct has been such as to induce action in reliance on it." 425 So.2d at 1184 (quoting *Burns v. Consolidated Am. Ins. Co.*, 359 So.2d 1203, 1207 (Fla.Dist.Ct.App.1978)).

¶ 20 Indiana has also adopted the rule that an insurer may be estopped from denying coverage when the insurer's agent makes oral misrepresentations regarding the coverage provided by the policy and the purchaser reasonably relies on such misrepresentations. *See Village Furniture, Inc. v. Associated Ins. Managers, Inc.*, 541 N.E.2d 306, 308 (Ind.Ct. App.1989). In *Village Furniture,* the court stated,

It is true that courts in Indiana and elsewhere, realizing that many people do not read their insurance policies and, perhaps even more important, do not do so because the policies are unreadable, have held that the agent's oral representations at the time of sale can override the written terms of the policy. If the agent insists to the prospective purchaser that the policy will insure against a hazard that the prospect[ive purchaser] is particularly concerned about, and the hazard materializes, the company may be estopped to plead the terms of the policy because the strength of the agent's oral assurances lulled the prospect[ive purchaser] into not reading, or reading inattentively, dense and rebarbative policy language.

*Id.* (citations and alterations omitted); *see also American Family Mut. Ins. Co. v. Jeffrey*, 2000 WL 1206623 at *5, 2000 U.S. Dist. LEXIS 12225, at *16, 28 (S.D.Ind. Aug. 11, 2000) (holding the insurer was estopped from denying coverage where agent told prospective purchaser that policy would cover "anything to do with" prospective purchaser's business including use of dump trucks, in clear contradiction to written policy which excludes such coverage and where prospective purchaser reasonably relied).[2]

2. Numerous other jurisdictions have also held that estoppel may bar the insurer's denial of coverage when misrepresentations were made before or at the inception of the insurance contract and where the prospective insured reasonably relied on those misrepresentations. *See, e.g., United Pac. Ins. Co. v. Meyer*, 305 F.2d 107, 113 (9th Cir.1962) (applying Idaho law and holding "that an insurance company may, through the conduct of its agents, be held liable for the coverage of the personal liability of a person not only not named as an insured in a policy, but actually expressly excluded by the terms of the written policy"); *Ivey v. United Nat'l Indem. Co.*, 259 F.2d 205, 208 (9th Cir.1958) (holding that under California law, "an insurance company may by its conduct or dealings apart from the policy itself be estopped from denying ... coverage ... [when] the insured has been led to believe [it] is protected under the policy"); *Allied Mut. Ins. Co. v. Dakota Rose, Inc.*, 43 F.Supp.2d 1081, 1087 (D.S.D.1999) (holding under South Dakota law, conduct of insurer giving rise to estoppel to deny coverage must occur before or at inception of policy and must be shown by clear and convincing evidence); *County Forest Prod. v. Green Mountain Agency, Inc.*, 758 A.2d 59, 66 (Me.2000) (holding insurer was estopped from denying the increase in policy limits be-

cause insurer misrepresented to insured that an increase in policy limits would be "no problem"); *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 67 Or.App. 623, 679 P.2d 879, 882 (1984) (holding that insurance company estopped from denying coverage where insured's son reasonably relied on agent's representation that son's auto was covered at inception of new policy to cover son); *Barth v. State Farm Fire & Cas. Co.*, 214 Pa.Super. 434, 257 A.2d 671, 675 (1969) (holding representations in brochure given before the contract was purchased, if reasonably relied upon, may be considered terms of the contract); *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E.2d 460, 462 (1990) (holding "the scope of risk under an insurance policy may be extended by estoppel if the insurer has misled the insured into believing the particular risk is within the coverage"); *State Auto. Cas. Underwriters v. Ruotsalainen*, 81 S.D. 472, 136 N.W.2d 884, 887 (1965) (holding insurer was estopped from denying coverage where agent assured insured that policy covered liability arising out of use of trailer); *Farmers Mut. Auto. Ins. Co. v. Bechard*, 80 S.D. 237, 122 N.W.2d 86, 92 (1963) (allowing oral representations of insurance agent to limit exclusions in written policy); *Marlin v. Wetzel County Bd. of*

¶ 21 We adopt the view that estoppel may not generally be used to extend the terms of an insurance contract. However, we hold that estoppel may bar an insurer's defense of noncoverage in the limited circumstances when an insurance agent makes material misrepresentations to a prospective insured before or at the inception of the contract and the prospective insured reasonably relies upon such misrepresentations in purchasing the insurance.

¶ 22 Based on Youngblood's deposition testimony and affidavit, he has shown at the least that there is a disputed issue of material fact as to whether material misrepresentations were made to him by an insurance agent before he entered into the contract.[3]

¶ 23 The second key requirement for equitable estoppel to apply to modify an insurance contract is reasonable reliance upon the precontract misrepresentations. "Reasonable reliance must be considered with reference to the facts of each case, and is usually a question for the jury to determine." *Conder v. A.L. Williams & Assocs.*, 739 P.2d 634, 638 (Utah Ct.App.1987). "Although it is impossible to draw precise legal boundaries of when reliance is reasonable ... the courts have given some direction." *Id.*

¶ 24 "Generally, a plaintiff may justifiably rely on positive assertions of fact without independent investigation." *Id.* "It is only where, under the circumstances, the facts should make it apparent to one of his knowledge and intelligence, or he has discovered something which should serve as a warning that he is being deceived, that a plaintiff is required to make his own investigation." *Id.* A plaintiff who fails to read a contract without fault on the part of the defendant generally is found not to have reasonably relied. *See id.* The Utah Su-

preme Court explained in *Johnson v. Allen,* 108 Utah 148, 158 P.2d 134 (1945), where there is nothing

> said or done which would be reasonably calculated to disarm a reasonably prudent person so that he would sign the contract without reading it and in the absence of some act or artifice in inducing the other part to refrain from reading the contract[,] relief from the fraud is often denied.

*Id.* at 137.

¶ 25 In *Conder,* the plaintiff, Conder alleged that during the course of several conversations with the defendant's agents regarding prospective employment with the defendant company, the agents fraudulently misrepresented the nature of their business and employment opportunities that Conder would have by working for the defendant. *See* 739 P.2d at 636. Relying upon those statements, Conder alleged that he terminated his former employment and was induced to work as an agent of the defendant, suffering various damages. *See id.* We determined that "we cannot say as a matter of law that Conder was unreasonable in his reliance on the alleged misrepresentations" made by the agents, *id.* at 638–39, because "a plaintiff may justifiably rely on positive assertions of fact without independent investigation." *Id.* at 639. Moreover, Conder did not have the knowledge, nor did he discover anything to serve as a warning sign that he was being deceived, which would require him to make an investigation of his own. *See id.* We determined that although Conder subsequently entered into a contract expressly limiting his employment opportunities, "Conder's affidavit alleges that he was relying on the verbal representations of [the defendants] ... thereby indicating that the contradictory written provision was of no effect." *Id.*

*Educ.*, 212 W.Va. 215, 569 S.E.2d 462, 472 (2002) (holding that "[e]xceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, instances where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation made at the policy's inception resulted in the insured

being prohibited from procuring the coverage he or she desired").

3. Youngblood also argues that Auto–Owners should be estopped from denying coverage because of misrepresentations that occurred after the inception of the contract. We agree with the trial court that *Perkins* controls any postcontract alleged misrepresentations.

¶ 26 In the instant case, based on Youngblood's deposition testimony and affidavit, there is again at least a disputed issue of material fact as to whether Youngblood reasonably relied on the representations made by Auto–Owners's agent. Furthermore, the Policy, even if read by Youngblood, is not particularly clear as to whether he would receive UIM coverage as a pedestrian.[4] This further boosts his subjective claim that he reasonably relied on the agent's assertions.

¶ 27 Accordingly, we reverse the trial court's grant of summary judgment and remand for proceedings consistent with this opinion. Moreover, we emphasize that the rule we have set forth is a narrow one and applies only in limited circumstances. The representations must be clear and material and must be made in an attempt to induce the potential insured to enter into the contract. The representations must lead the potential insured to feel as though he or she need not read the contract, and the representations must be of the type that a reasonable person would rely upon.

## CONCLUSION

¶ 28 We determine that the trial court erred by granting Auto–Owners's motion for summary judgment. The judgment of the trial court is reversed. We remand for proceedings consistent with this opinion.[5]

¶ 29 WE CONCUR: NORMAN H. JACKSON and GREGORY K. ORME, Judges.

---

4. The Policy is confusing and does not make clear that Youngblood would not be covered as a pedestrian in an accident because the Policy was purchased in the company name rather than in his own.

5. We do not reach the remaining issues on appeal because of our disposition.